## LYDIA J. PORTER v. MISSOURI PACIFIC RAILWAY COMPANY, Appellant.*

### Division Two, November 20, 1906.

1. **NEGLIGENCE: Enhanced Danger: Instruction.** The fact that the road crossing where plaintiff's husband was struck by defendant's train might have been of such a character, because of a hole near thereto around which he had to drive his wagon, as to enhance the danger of collisions and accidents, is not a sufficient ground of negligence to entitle plaintiff to recover; and where the evidence does not show that the existence of the hole or condition of the crossing had anything to do with the collision, it is error to instruct the jury that, if the dangerous condition of the crossing enhanced the danger of accidents and collisions, it was the duty of defendant in running its train to exercise a degree of care commensurate with the danger of collision reasonably to be apprehended at that place.

*Decided May 22, 1906. Motion for rehearing filed; motion overruled November 20, 1906.

2. ———: ———: **Conflicting Instructions.** Instructions for plaintiff and defendant should not conflict. An instruction for defendant that the only duty of the engineer of a train approaching a road crossing was to sound the whistle at least eighty rods before the engine reached the crossing, and to ring the bell from the time the whistle was sounded until the engine passed over said crossing, and that if the jury believed defendant discharged these duties they could not find a verdict for plaintiff because of the failure of the train to slow down, etc., is in conflict with an instruction which imposes upon those in charge of the train the additional duty of exercising a degree of care in the operation of the train commensurate with the danger of collisions reasonably to be apprehended at such crossing.

3. ———: **Failure to Sound Whistle or Bell: Contributory Negligence: Neither Looking nor Listening.** An adult person about to cross a railroad at a country road crossing is not in the exercise of ordinary care unless he looks or listens for an approaching train; and if by listening he could have heard, or by looking he could have seen, the approaching train in time to have avoided being struck by it, but did neither, he is guilty of contributory negligence, and cannot recover although defendant's servants in charge of the train were guilty of negligence in failing to sound the whistle eighty rods from the crossing and in failing to keep the bell ringing until the crossing was passed.

4. ———: ———: ———: ———: **Concurrent Negligence.** If a traveler attempting to cross a railroad track at a public crossing is injured by reason of the concurrent fault of himself and the railroad company, he cannot recover damages for his injuries.

5. ———: **Presumption That Traveler Looked and Listened.** The presumption indulged, in the absence of any evidence as to whether the traveler looked or listened as he approached the railroad crossing, that he did look or listen, is overcome by the irresistible conclusion that had he listened he could have heard, or had he looked he could have seen, the train in time to have avoided the accident. It is also overcome by the uncontradicted evidence of a witness for defendant that the deceased traveler did in fact look around and saw the train before entering upon the track.

6. ———: **Discovering Traveler's Peril: Failure to Avoid Injury.** Those in charge of a train have the right to assume that a traveler on a public road will not leave a place of safety and enter a place of danger, by attempting to cross the track in front of an oncoming train; and if the evidence shows that they

did everything in their power to stop the train after they discovered his perilous position, the company cannot be held liable because they did not stop the train in time to avoid the injury.

7. ———: **Demurrer.** Under the facts in this case the court should have given defendant's instruction in the nature of a demurrer to the evidence asked at the close of all the evidence.

Appeal from Lafayette Circuit Court.—*Hon. Samuel Davis, Judge.*

REVERSED.

*Martin L. Clardy* and *W. W. Graves* for appellant.

(1) The third ground of negligence which charges the frightening of the team is thoroughly eliminated from the case both by law and by the evidence. Seeing a person in danger it became the duty of the company to give him the usual and ordinary danger signals and these are all shown to have been given. Further, the evidence fails to disclose the frightening of the team. (2) The evidence clearly shows that defendant's demurrer to the testimony offered both at the close of plaintiff's case and at the close of the entire case should have been given. There is no showing whatever in this record which would justify the conclusion that had the deceased before undertaking to attempt to cross said crossing, looked and listened, with any care whatever, he would not have seen or heard the train. (a) Persons entering railway crossings are bound to exercise ordinary care and prudence, and failing in this, if injured by the concurrent fault of themselves and the railway company, they cannot recover. Jones v. Barnard, 63 Mo. App. 501. (b) A person who is about to cross a railway track must look and listen, when by listening he can hear and by looking he can see the approaching train, and the omission to do either will bar recovery. Boyd v. Railroad, 105 Mo. 371; Fusili v. Railroad, 45

Mo. App. 535; Drake v. Railroad, 51 Mo. App. 562; Maxey v. Railroad, 113 Mo. 1; Sullivan v. Railroad, 117 Mo. 214; Fellenz v. Railroad, 106 Mo. 154. (3) The fireman testified that he saw the deceased after he left the wagon bridge and before he started to make the crossing. When the train crew saw him start from the county bridge to this crossing, they had the right to presume that the deceased would avoid the danger and were not negligent in not stopping the train until they saw he was in an actual perilous position. Schmidt v. Railroad, 90 S. W. 136; Guyer v. Railroad, 170 Mo. 350; Carrier v. Railroad, 175 Mo. 482; Sharp v. Railroad, 161 Mo. 235; Tanner v. Railroad, 161 Mo. 497; Hayden v. Railroad, 124 Mo. 573; Reno v. Railroad, 180 Mo. 469. (4) Even if there was a failure to give the signal required by law, yet if the person without looking and listening placed himself in a dangerous position, there was such contributory negligence as bars recovery. Maxey v. Railroad, 113 Mo. 1; Butts v. Railroad, 98 Mo. 272; Henze v. Railroad, 71 Mo. 636; Booker v. Railroad, 122 Mo. 533; McNamee v. Railroad, 135 Mo. 440; Green v. Railroad, 90 S. W. 805; Hook v. Railroad, 162 Mo. 569; Schmidt v. Railroad, 160 Mo. 43. (5) Even if the view is obstructed in his approach to the crossing, as is the fact in the case at bar, the traveler must continue to look and listen until the crossing is reached and the danger point passed. In this case the undisputed evidence is that had this man within thirty or forty feet or more of this crossing looked in the direction of this train he could have seen it and stopped, and there is no excuse on earth for his death save his contributory negligence. It stands without question that had he listened as the law requires he could have heard the train before trying to make the crossing. There are a number of cases covering the exact situation in this case beginning with Kelsey v. Railroad, 129 Mo. 362; Jones v. Barnard, 63 Mo. App. 501; Weller v. Railroad, 120 Mo. 635;

Stevens v. Railroad, 67 Mo. App. 356; Lien v. Railroad, 79 Mo. App. 475; Weller v. Railroad, 164 Mo. 180; Fusili v. Railroad, 45 Mo. App. 535; Schmidt v. Railroad, 90 S. W. 136.

*John M. Redmond* and *Wm. Aull* for respondent.

(1) In the absence of any evidence on plaintiff's behalf as to acts of care on the part of decedent, he is presumed to have looked and listened and to have exercised ordinary care in attempting to go over the crossing to avoid possible collision with the defendant's train. Riska v. Railroad, 180 Mo. 188; Weller v. Railroad, 164 Mo. 198; Petty v. Railroad, 88 Mo. 320; Schlereth v. Railroad, 115 Mo. 87; Crumpley v. Railroad, 111 Mo. 158; Buesching v. Gas Light Co., 73 Mo. 219; Meadows v. Ins. Co., 129 Mo. 76; Bludorn v. Railroad, 108 Mo. 439; Parsons v. Railroad, 94 Mo. 294; Eckhard v. Railroad, 89 S. W. 608; Ryan v. Railroad, 89 S. W. 869; Weller v. Railroad, 120 Mo. 650; O'Connor v. Railroad, 94 Mo. 150; Johnson v. Railroad, 77 Mo. 546; Thompson v. Railroad, 51 Mo. 190; Donahue v. Railroad, 91 Mo. 357; Huckshold v. Railroad, 90 Mo. 548. The natural instinct to avoid injury is always an element of evidence. Meadows v. Ins. Co., 129 Mo. 93; Davis v. Railroad, 46 Mo. App. 189. (2) The evidence on the part of plaintiff was very clear and convincing that the whistle was not blown or bell rung at or near the whistling post or elsewhere until just as the decedent was killed. The failure to give the statutory signals was negligence *per se* on part of defendant. Lloyd v. Railroad, 128 Mo. 595; Sullivan v. Railroad, 117 Mo. 245; Gratiot v. Railroad, 116 Mo. 450; Murray v. Railroad, 101 Mo. 242; Dickson v. Railroad, 104 Mo. 501; Henlon v. Railroad, 104 Mo. 387; Karle v. Railroad, 55 Mo. 47. (3) The establishment of point 1 and 2, above, casts the burden on the defendant, first to show that the failure to ring the bell or blow the

whistle did not cause the death of decedent; second, to satisfactorily prove contributory negligence on the part of decedent.　R. S. 1899, sec. 1102; Crumpley v. Railroad, 111 Mo. 158; Hook v. Railroad, 162 Mo. 603; Petty v. Railroad, 88 Mo. 321; Green v. Railroad, 90 S. W. 805; Riska v. Railroad, 180 Mo. 188; Weller v. Railroad, 164 Mo. 200; Huckshold v. Railroad, 90 Mo. 556; Kennayde v. Railroad, 45 Mo. 262.　(4) Unless the evidence for plaintiff clearly shows contributory · negligence, it follows logically from points 1, 2, and 3, foregoing, that where the evidence of contributory negligence is offered by the defendant, the question is for the jury.　The case should go to the jury, first, when there is room for a difference of opinion among practical men from all walks of life as to whether there was care and caution on part of deceased; second, when there is a conflict in the evidence; third, when the truthfulness of a witness is in question.　Eckhard v. Railroad, 190 Mo. 593; Church v. Railroad, 119 Mo. 215; Franklin v. Railroad, 188 Mo. 542; Field v. Railroad, 88 S. W. 134; Jones v. Barnard, 63 Mo. App. 509; Lamb v. Railroad, 147 Mo. 186; Jennings v. Railroad, 112 Mo. 277; Stone v. Hunt, 94 Mo. 475; Buesching v. Gas Light Co., 73 Mo. 219; Railroad v. Miller, 99 Fed. 529; Keun v. Railroad, 90 Mo. 314; Huckshold v. Railroad, 90 Mo. 548; Kelly v. Railroad, 101 Mo. 67; Petty v. Railroad, 88 Mo. 318; Kennayde v. Railroad, 45 Mo. 255; Warren v. Exchange, 52 Mo. App. 157; Weller v. Railroad, 164 Mo. 199; Gannon v. Gas Co., 145 Mo. 502; Hutchinson v. Railroad, 161 Mo. 255; Baker v. Railroad, 122 Mo. 544.　(5) Before a demurrer could be sustained at the close of the entire case, on account of contributory negligence, all the facts developed in the trial of the cause upon a fair and reasonable consideration, must point irresistibly to but one conclusion.　If reasonable men might differ as to inferences to be drawn from facts disclosed, under well-settled rules the question of contributory negligence must be left to the jury.

Eckhard v. Railroad, 190 Mo. 593; Gannon v. Gas Co., 145 Mo. 502. In order to overcome the presumption in favor of decedent and to defeat plaintiff's action, it devolved upon defendant to show by the weight of the evidence a failure on the part of the deceased to exercise ordinary care to avoid the injury, and that his failure to exercise such care was its proximate cause and so direct and immediate that but for the want of such ordinary care the injury would not have occurred. Riska v. Railroad, 180 Mo. 189; Weller v. Railroad, 164 Mo. 199; Fields v. Railroad, 88 S. W. 134. (6) The jury have a right to say of the testimony of any witness, "that it wants in the power to convince." Gannon v. Gas Co., 145 Mo. 519; Seshom v. Bank, 148 Mo. 265; Gregory v. Chambers, 78 Mo. 294; Wolfe v. Campbell, 110 Mo. 114; Mineral Land Co. v. Ross, 135 Mo. 107; Schroeder v. Railroad, 108 Mo. 322; Davies v. Railroad, 159 Mo. 1. (7) The deceased had the right to presume that defendant would do its duty, and to rely on the performance of such duty. Weller v. Railroad, 120 Mo. 653; Sullivan v. Railroad, 117 Mo. 214; Jennings v. Railroad, 112 Mo. 420; Crumley v. Railroad, 111 Mo. 152; Kennayde v. Railroad, 45 Mo. 261; Tabor v. Railroad, 46 Mo. 356; Hutchinson v. Railroad, 161 Mo. 255; Peterson v. Railroad, 89 S. W. 1042; Riska v. Railroad, 180 Mo. 188; Petty v. Railroad, 88 Mo. 318; Johnson v. Railroad, 77 Mo. 546; Halferty v. Railroad, 82 Mo. 99. (8) Decedent was not a trespasser, but had a right equal to that of defendant to the use of the road and the right to presume defendant would obey the law. Riska v. Railroad, 180 Mo. 191; Nixon v. Railroad, 141 Mo. 425; Baker v. Railroad, 147 Mo. 140; Rapp v. Railroad, 190 Mo. 144; Baker v. Railroad, 147 Mo. 232; Klockenbrink v. Railroad, 172 Mo. 689. If obedience to law would have prevented injury, defendant was negligent and plaintiff is entitled to recover. Hanlon v. Railroad, 104 Mo. 387; Karle v. Railroad, 55 Mo. 482; Zimmerman v. Railroad, 71 Mo. 476; Barkley v.

Railroad, 76 Mo. 367; Henry v. Railroad, 76 Mo. 293. (9) If the defendant's agents (a) could have discovered the perilous situation of Porter, or (b) did so discover it in time to have prevented the accident and did not do so, then defendant is liable even though Porter was negligent. Klockenbrink v. Railroad, 172 Mo. 682; Sullivan v. Railroad, 117 Mo. 245; Morgan v. Railroad, 157 Mo. 262; Kelly v. Railroad, 101 Mo. 269; Scullin v. Railroad, 184 Mo. 695; Rapp v. Railroad, 190 Mo. 144; Fearons v. Railroad, 180 Mo. 208; Donohue v. Railroad, 75 Mo. 610, 83 Mo. 555; Schmidt v. Railroad, 90 S. W. 140; Guyer v. Railroad, 174 Mo. 350; Woods v. Railroad, 188 Mo. 229. "It was as much the duty of the railroad employees to look out for him on the track as it was for him to look out for the train." Eswin v. Railroad, 96 Mo. 290; Kellny v. Railroad, 101 Mo. 78; Sluder v. Railroad, 88 S. W. 653; Scullin v. Railroad, 184 Mo. 705. (10) The case below was properly sent to the jury on the last-chance doctrine of the law, if that were the only issue in the case. Dieter v. Zbaren, 81 Mo. App. 615; Fearons v. Railroad, 180 Mo. 209. (11) "Because one who finds himself suddenly in a position of peril does not choose the safer of open courses for him to pursue, he is not for that reason alone chargeable with negligence." Dalton v. Railroad, 104 Iowa 27; Lorenz v. Railroad, 88 N. W. 835; Crawford v. Railroad, 109 Iowa 433. The exact point applicable to this was decided in Bien v. Railroad, 108 Mo. App. 415. Brazis v. Railroad, 102 Mo. App. 227; Dickson v. Railroad, 124 Mo. 140.

BURGESS, P. J.—This is an action by plaintiff, the widow of E. B. Porter, deceased, against the defendant company, to recover the sum of five thousand dollars damages, under the provisions of section 2864, Revised Statutes 1899, known as the second section of the Damage Act. The petition upon which the case was tried was the second amended petition, in two counts;

but as the recovery was upon the first count, the second count will not be further noticed. Said first count alleges:

"That the death of the said E. B. Porter was due to the gross, wanton and willful negligence of the defendant and its agents and employees, its engineer and fireman in charge of said train, as follows:

"1st. That the defendant through its agents and employees had knowledge of the dangerous conditions about, on and surrounding said crossing and approach to the same, hereinbefore stated, at the place where the said E. B. Porter was killed, and that said crossing, on account of the conditions prevailing, was dangerous, and that a team and driver were liable to be caught on the said crossing on account of said prevailing conditions; and in failing to have its train slowed down and under control approaching said crossing, and in running the same up to said crossing at a high rate of speed.

"2nd. In failing to sound the whistle or ring the bell of said engine as the said engine approached said crossing eighty rods before reaching said crossing, and in failing to continue to sound said whistle at intervals or to keep the bell ringing until said crossing was passed, as provided by law.

"3rd. In sounding the locomotive whistle continuously on the immediate approach of said crossing, thereby frightening the team of horses driven by the decedent E. B. Porter, and preventing them from crossing to a point of safety.

"4th. In the failure of the defendant through its agents and employees to observe the perilous position of the decedent E. B. Porter with the team of horses on the crossing at which he was killed, in time to have stopped the train or to have prevented the collision and its results as herein described.

"5th. In the failure of the defendant and its employees, the engineer and fireman in charge of said

train, to stop the same or make an effort to do so, after discovering the peril of E. B. Porter, decedent, with the team on the crossing, or to avert the collision with the said decedent and the said team.

"That by reason of the killing of the said E. B. Porter the plaintiff has been damaged in the sum of five thousand dollars, no part of which has been paid or satisfied in any way.

"Wherefore, plaintiff asks judgment against the defendant for the sum of five thousand dollars and for her costs."

By answer, defendant denied all the allegations in both counts and pleaded contributory negligence on the part of the deceased. Plaintiff replied, denying all new matter in said answer contained.

Upon a trial before the court and jury, plaintiff recovered a verdict upon said first count of the petition for $5,000, upon which judgment was rendered. Within four days after verdict the defendant filed motion for new trial, which was overruled, and defendant appealed.

The material facts, as disclosed by the record, are substantially as follows:

The deceased was killed by one of defendant's passenger trains about six o'clock on the evening of March 6, 1902, while attempting to cross the track of said railway while on his way with a wagon and team from Lexington to Wellington in Lafayette county. He crossed the track at the point of the accident twice almost every day, and knew the time the train was due there. It was open daylight at the time of the accident. The only witnesses to the accident were the fireman and engineer of the train, which was running at the time at a speed of about thirty miles an hour. The train was westbound from Lexington to Wellington, and on time when it left Lexington, about five or six miles east of the place of the accident. At the time of the accident deceased was sitting in a common farm wagon drawn

by two horses. He had been engaged for some time in hauling flour from Wellington to Lexington for a milling company, and was familiar with this railway crossing, its situation and surroundings. The usual warning signal of danger was in plain view at the crossing. Back from the scene of the accident for at least a quarter of a mile northeastward, which was the direction from which deceased was traveling and the direction from which the train that struck him approached, the county road and the railway ran practically parallel, and for the greater part of the way the county road was in proximity to the right of way. The elevation of the track was three or four feet above the county road, and the evidence showed that a person traveling westward toward the crossing where the accident occurred could, on crossing the county bridge over the Little Sni, one hundred and twenty feet from the railway crossing, see a train half a mile down the track, but that he loses sight of it as it approaches on account of timber until the train gets within one hundred feet of the bridge across Cow Creek, which bridge across Cow creek is about seven hundred feet from the place of the accident; that a traveler in a wagon, when arrived at the crossing, could see up the track six or seven hundred feet.

There was at the time of the accident, and for several months or a year prior thereto, a hole, two or three feet deep, between the right of way fence and the crossing, so that a kind of temporary wagon way had been formed by teams passing around the hole.

Plaintiff introduced evidence showing and explaining the elevation of the bridges, the railroad and wagon road, the curve of the railroad approaching the point where the accident occurred; the trees, vines and underbrush bordering the railroad track and wagon road; also as to the vision of the approaching train from the wagon bridge over the Little Sni and from the crossing.

The evidence upon the part of the defendant showed affirmatively that the whistle on the train was sounded near the whistling post, 1320 feet northeast of the crossing, and that the whistle was sounded a number of times again as soon as the deceased was discovered approaching the crossing. Plaintiff introduced a number of witnesses, some of whom were passengers on the train at the time, who testified that they did not hear the bell ring or the whistle sound.

The court, at the instance of the plaintiff, instructed the jury, with respect to the first allegation of negligence in the petition, as follows:

"The jury are instructed that if they believe from the evidence that the crossing in controversy was of such a character as to enhance the danger of collision and accidents at said crossing, it was the duty of the servants, agents and employees of defendant in managing or running said locomotive and train of cars to exercise a degree of care in the operation of said train commensurate with the danger of collision reasonably to be apprehended at that location.

"And if the jury further believe from the evidence that the agents, servants and employees of defendant failed to exercise such commensurate degree of care in the movement of such locomotive and train of cars as it approached and passed over said crossing, either by not keeping the bell on such locomotive ringing from a point eighty rods before said train reached said crossing or sounding the whistle on said locomotive at said point eighty rods before reaching said crossing, and continuing to sound the same at intervals until said locomotive passed said crossing such failure in any of said particulars constituted negligence on the part of said defendant.

"And in passing on the question as to whether the agents, servants and employees of the defendant were or were not negligent in running or managing said locomotive and train in any of the particulars aforesaid,

you should take into consideration all of the facts and circumstances which you may find from the evidence existed at the time when and at the place where the injury occurred. And if you further believe from the evidence that in consequence of such negligence in any one or more of the respects hereinbefore mentioned the said E. B. Porter received the injuries from which he died, you will find your verdict for the plaintiff, unless you further believe from the evidence that the deceased was guilty of negligence which directly contributed to his death. And the burden of proving contributory negligence on the part of E. B. Porter rests on the defendant, and unless the defendant has proven such contributory negligence by a preponderance of the evidence, or unless said contributory negligence is shown by plaintiff's evidence, you cannot find for the defendant on that ground.''

This instruction is erroneous and vicious. Its first sentence directs the attention of the jury to the dangerous condition of the crossing, and tells them that if the crossing was of such a character as to enhance the danger of collisions and accidents at such crossing, it was the duty of the servants, agents and employees of defendant, in managing or running said locomotive and train of cars, to exercise a degree of care commensurate with the danger of collision reasonably to be apprehended at that location, when in fact the evidence does not show that the existence of the hole or condition of the crossing had anything whatever to do with the collision. The wagon was not loaded, and its passage over the crossing was not impeded, though it might have been slightly delayed by reason of the necessity of driving around the hole. In order to have entitled plaintiff to recover on account of the condition of the crossing, it devolved upon her to show that its condition directly caused or contributed to the death of her husband, which the evidence in no way shows. There was, therefore, nothing upon which to bottom this part

of the instruction, and the mere fact that the crossing might have been of such a character as to enhance the danger of collisions and accidents is not a sufficient ground of negligence to entitle plaintiff in this case to recover. Besides, this instruction as a whole is in direct conflict with defendant's instruction No. 4, which is as follows:

"As to said first alleged act of negligence under the first count of plaintiff's petition, the court instructs the jury that although they may believe from the evidence that the crossing on which plaintiff's husband was struck was dangerous for the crossing of teams by reason of the near location of the wagon road and the railroad to each other, and the nearness of the wagon road and the railroad bridges across a stream known as Little Sni, near said crossing, and that the approach thereto was steep and over loose stones, and by reason of a sharp curve in the railroad approaching said bridge from the east and by reason of such railroad running through weeds, vines, underbrush and trees, and that the defendant through its employees knew such surroundings near said crossing, yet in approaching said crossing it was not the duty of the defendant's employees running the engine and train which struck the plaintiff's husband, to slow down the speed of its train nor to avoid approaching said crossing at the usual and ordinary rate of speed.

"The only duty of said engineer on approaching said crossing, so far as the character and condition of said crossing is concerned, was to sound the whistle of his engine at least eighty rods before his engine reached said crossing, and to ring the bell thereof from the time said whistle was sounded until his engine passed over said crossing. In other words, such engineer owed no other or greater duty to the public under the law when approaching the crossing in question than he owed when approaching any other crossing over the

railroad track, and if the jury believe that the engineer
in charge of the engine which struck the plaintiff's hus-
band sounded the whistle of his engine at least eighty
rods before his engine reached said crossing and rang
the bell thereof from the time said whistle was sounded
until his engine passed over said crossing, then the
jury cannot find a verdict in plaintiff's favor on the
first or second alleged acts of negligence in the first
count of plaintiff's petition.''

It will be observed that by this instruction the jury
were told that the *only* duty of the engineer, on ap-
proaching said crossing, so far as the character and
condition of said crossing was concerned, was to sound
the whistle of his engine at least eighty rods before
the engine reached said crossing, and to ring the bell
thereof from the time said whistle was sounded until
his engine passed over said crossing, and that, in ef-
fect, if the jury believed the engineer discharged these
duties they could not find a verdict in plaintiff's favor
on the first or second alleged acts of negligence in the
first count of the petition; while, by plaintiff's instruc-
tion aforesaid, there was imposed upon those in charge
of the train the further and additional duty of exercis-
ing a degree of care in the operation of such train com-
mensurate with the danger of collision reasonably to
be apprehended at that location, and that if they failed
to do so, and in consequence thereof the said E. B. Por-
ter received the injuries from which he died, the jury
should find for the plaintiff.

The two instructions are clearly in conflict and ir-
reconcilable.

The most that can be said for plaintiff with re-
spect to the alleged failure of those in charge of the
train to sound the whistle and ring the bell when ap-
proaching the crossing is that the evidence is somewhat
conflicting, and that as the question was properly sub-
mitted to the jury and they found that those in charge
of the train failed to ring the bell or sound the whistle

as required by law, this court should not, therefore, interfere with the verdict. But conceding that question to be settled in plaintiff's favor, that is, that defendant's servants in charge of the train were guilty of negligence because of failure to sound the whistle at least eighty rods before the engine reached the crossing and to keep the bell ringing until said crossing was passed, as provided by law, that would not entitle plaintiff to recover, provided the deceased was guilty of negligence contributive to his death. There is no pretence that he either looked or listened when about to cross the track, when by listening he could have heard, and by looking he could have seen, the approaching train in time to have avoided the injury. In doing so he would simply be exercising that ordinary care which the law requires of all adult persons when about to cross a railroad track at a public crossing, and if a person in crossing such track is injured by reason of the concurrent fault of himself and the railroad company he cannot recover. [Jones v. Barnard, 63 Mo. App. 501.]

It is well settled in this State that when a traveler approaches a railroad crossing he must look both ways and listen for coming trains, and the negligence of the company in failing to give proper signals will not excuse the traveler's duty to look and listen. [Fletcher v. Railroad, 64 Mo. 484; Zimmerman v. Railroad, 71 Mo. 476; Baker v. Railroad, 122 Mo. 533; Stepp v. Railroad, 85 Mo. 229; Donohue v. Railroad, 91 Mo. 357; Butts v. Railroad, 98 Mo. 272; Schmidt v. Railroad, 191 Mo. 215.]

In response to this well-settled rule plaintiff contends that, in the absence of any evidence on plaintiff's behalf as to acts of care on the part of deceased, he is presumed to have looked and listened and to have exercised ordinary care to avoid possible collision with defendant's trains while he was attempting to cross the

199 Sup.—7

track. This may be conceded to be well-settled law, as the authorities cited by counsel for plaintiff abundantly show; but this presumption is overcome by the logical and irresistible conclusion that deceased, had he listened, could have heard the train, and, had he looked, he must have seen it in time to have avoided the collision, and having failed to take such precautions he was guilty of negligence as a matter of law. [Schmidt v. Railroad, supra.] Besides, the uncontradicted evidence of the fireman on the engine was that the deceased did, in fact, look around before entering upon the track and that he saw the train, but that Porter "drove directly on the crossing, he urged his horses right over the crossing of the track," which affirmatively shows negligence on the part of the deceased.

There remains for consideration but one other question, which is as to whether defendant's employees in charge of the train could have discovered the perilous situation of Porter, or did so discover it, in time to have prevented the collision, and did not take proper and necessary steps to prevent it. To determine this question we must look to the testimony of the fireman on the train, the only witness who was in a position to see the whole occurrence. He testified as follows:

"Q. As you ran up toward the trestle work across Cow Creek and Sni crossing, state to the jury if you saw at any time Mr. Porter or the man that was struck, on the country road, and if so, where you first saw him and where the engine was? A. Well, of course you understand there is a curve in the track, you have to go around the bulk of the curve before you can see. The bridge of course is on the left hand side as you go around the curve, I saw the team approaching the bridge. Now they kept going right along and I watched them and when they got a little closer around the team started up in a trot and I says to the engineer, 'There is a team on the bridge,' I says, 'There is a man on the bridge.'

"Q.    What did he do, if you remember?    A.    Shut off his steam and blowed the whistle.

"Q.    Did you say anything else to him?    A.    I said, 'I believe he is going to cross ahead of us.'    During this time this man looked around and saw the engine.

"Q.    What did he do then?    A.    He urged his horses ahead.

"Q.    What did the engineer do, if anything, when you told him you believed he was going to cross the track?    A.    The engineer put on his air.

"Q.    Do you know what is meant by the emergency stop?    A.    Yes, sir.

"Q.    Well, how did he put on his air then?    A.    He set his air, I couldn't say just how.

"Q.    What happened after that, how did the man in the wagon proceed, tell it just as you saw it, just tell as you saw it there, and if the man drove directly on the crossing?    A.    Why, the man drove directly on the crossing, he urged his horses right over the crossing of the track.

"Q.    Now state to the jury, it struck on the crossing right there, did it?    A.    Yes, sir.

"Q.    At the Little Sni crossing?    A.    Yes, sir.

"Q.    From the time you saw that man as he was approaching from the county bridge until he went up on the crossing and was struck, was he out of your sight?    A.    No, sir, he was not."

Those in charge of the engine had the right to presume that Porter would not leave a place of safety and enter a place of danger, and were not negligent in not stopping the train sooner, as the evidence clearly shows that they did everything in their power to stop or check up the train after they discovered the perilous position of the deceased.    There is no evidence showing or tending to show that those in charge of the train were derelict in this regard.

It is manifest, from the evidence, that the deceased

could not have failed to see the approaching train, and that in fact he did see it, but that he nevertheless urged his team over the crossing.    And although "the defendant may have been negligent in failing to give signals for the crossing, . . . yet the deceased having lost his life through his own negligence in failing to discharge the duty imposed upon him by law, in his situation, the plaintiff cannot recover for his death." [Hayden v. Railroad, 124 Mo. 566; Sanguinette v. Railroad, 196 Mo. 466.]

Our conclusion is that the court should have given the instruction in the nature of a demurrer to the evidence, at the close of all the evidence, as asked by defendant. The judgment is reversed.

All concur.