# KOLB, Respondent, v. ST. LOUIS TRANSIT COMPANY, Appellant.

### St. Louis Court of Appeals, November 3, 1903.

1. **Street Railways: CONTRIBUTORY NEGLIGENCE: LOOK AND LISTEN.** Where plaintiff testified that before he drove upon defendant's track, he looked both ways, but neither saw nor heard a car approaching and drove ahead, and ascribed his inability to see the car to an obstruction caused by the foliage of the near-by trees, it is not error to refuse a peremptory instruction to find for defendant on the theory that the physical facts show that plaintiff, without looking, negligently drove upon the track in the face of the approaching car.

2. ————: **PROHIBITED RATE OF SPEED.** Plaintiff's evidence that the car was running at a prohibited rate of speed, and the fact that the car was 200 or 250 feet away when plaintiff drove upon the track, tends to show negligence per se on the part of defendant and the reasonable inference from this evidence is, that had the car been running at a lawful rate of speed, the accident would not have happened.

3. ————: **DUTY OF MOTORMAN: PRIOR NEGLIGENCE OF PLAINTIFF NO DEFENSE, WHEN.** Where it appears that the car was 200 or 250 feet west from plaintiff when he approached the track upon which the car was running, with the plaintiff in plain view, and that the car could have been stopped in a shorter space than 200 feet, it was the duty of the motorman to have seen the perilous situation of the plaintiff and to have stopped the car in time to avoid injuring him; and the prior negligence of plaintiff, in driving upon the track, is no defense.

4. **Verdict: QUOTIENT.** Jurymen may, without any agreement or thought of adopting the quotient as a verdict, set down in a column the amount each juror is in favor of awarding, add this column and divide the total by twelve, and afterward agree that the quotient shall be their verdict, but it is not correct practice to so instruct the jury and thus invite them to find a quotient verdict.

5. ————: ————. Where there is no evidence that a quotient verdict was rendered by the jury, the presumption is that they adopted the proper method of finding the amount of damages.

6. **Negligence:** DUTY OF MOTORMAN. The weight and speed of defendant's car running in a populous city where the streets are thronged with vehicles traveling on and across defendant's tracks, renders it dangerous to all other vehicles and makes it the duty of the motorman to keep a vigilant watch, and, on the first appearance of danger, to stop or check his car in the shortest time and space practicable.

Appeal from Lincoln Circuit Court.—*Hon. Elliott M. Hughes,* Judge.

AFFIRMED.

*Boyle, Priest & Lehmann* and *Martin & Woolfolk* for appellant.

(1)   The plaintiff was guilty of contemporaneous, concurrent, contributory negligence, which under the law governing this class of cases, entitled the defendant to a verdict, and defendant's peremptory instruction directing the jury to find a verdict for defendant, requested at the close of the whole of the evidence in the case, should have been given. 1 Thompson Neg. sec. 237; Beach Contrib. Neg. (2 Ed.), secs. 56, 185; Murphy v. Railroad, 153 Mo. 252; Watson v. Railway, 133 Mo. 246; Conrad Grocer Co. v. Railroad, 89 Mo. App. 534; Boyd v. Railroad, 105 Mo. 372; Guenther v. Railroad, 95 Mo. 297; Railway v. Moseley, 57 Fed. 92; McGrath v. Railroad, 59 N. Y. 468; Spellane v. Railway, 135 Mo. 414; Maxey v. Railway, 113 Mo. 1; Vogg v. Railway, 138 Mo. 172; Schmitt v. Railway, 160 Mo. 43; Schofield v. Railway, 114 U. S. 615; Hook v. Railway, 162 Mo. 569; Claybaugh v. Railway, 56 Mo. App. 630; Kelly v. Union Ry. & Transit Co., 11 Mo. App. 1.   (2)   The rule requiring the defendant, after discovering plaintiff's negligence, to avoid the injury by the exercise of reasonable care, does not apply or govern where both parties are contemporaneously and actively in fault and injury ensues by their mutual carelessness. 1 Thompson Neg. sec. 237; O'Brien v. McGlinchy, 68 Me. 552; Holmes v.

South, 97 Cal. 161. (3) In such cases, unless the doctrine of contributory negligence is abolished, there can be no recovery. The negligence of each is the proximate cause of the injury; the negligence of one just as near the injury as that of the other. The above rule applies when there is prior negligence of the plaintiff and subsequent negligence of the defendant. 1 Thompson Neg., sec. 238; Beach Contrib. Neg. (2 Ed.), sec. 185; Inland & Co. v. Tolson, 139 U. S. 551; Railroad v. Cameron, 43 Neb. 297; Krunzer v. Railroad, 151 Ind. 592; 5 American Neg. Rep., 137; 52 N. E. 220; Neet v. Railroad, 106 Iowa 248; Ford v. Railroad, 106 Iowa 85; Kirtley v. Railroad, 65 Fed. 386; Atwood v. Railroad, 91 Me. 399. (4) The trial court erred in refusing to give instruction No. 1 requested by the defendant. State v. Austin, 113 Mo. 543. (5) It was error in the court to give plaintiff's instructions 1 and 3, because said instructions told the jury that the defendant had to keep a vigilant watch for vehicles, and on seeing the plaintiff drive on defendant's track to stop said car in the shortest time and space practicable, etc. These instructions impose on defendant an extraordinary and high degree of care and responsibility to strangers, when the law requires only ordinary care. 2 Thompson on Negligence sec. 1379; Beach on Contrib. Neg. (2 Ed.), secs, 179-180. This is well-settled authority in Missouri. (6) The trial court erred in admitting in evidence, on the part of the plaintiff over the objection of the defendant, the ordinance of the city of St. Louis requiring the conductor and motorman to keep a vigilant watch and stop the car in the shortest time and space possible on the first appearance of danger to any one moving toward defendant's track. Sanders v. Railway, 147 Mo. 411; Byington v. Railroad, 147 Mo. 673; Senn v. Railroad, 108 Mo. 152; Holwerson v. Railroad, 157 Mo. 216; St. Louis v. Ins. Co., 107 Mo. 92; Badgley v. St. Louis, 149 Mo. 123.

*A. R. Taylor* for respondent.

(1)   In a late case our supreme court states the proposition thus: "The sum of the adjudicated cases bearing upon the relative rights and duties of street cars and citizens traveling in vehicles is that both have a right to use the street, but that neither has an exclusive (paramount) right." Oates v. Railroad, 168 Mo. l. c. 544.   (2)   The plaintiff seeing no car near enough to threaten his passage, had a right to proceed to cross the street relying upon the servants of the company obeying the law limiting the speed of the car to 8 miles per hour—and also to assume that the motorman would obey the ordinance which required him to stop the car to avoid collision.   This proposition has been settled by the decisions of the Supreme Court in the following cases.   Hutchinson v. Railroad, 161 Mo. l. c. 254; Gratiot v. Railroad, 116 Mo. l. c. 454; Sullivan v. Railroad, 117 Mo. l. c. 222; Weller v. Railroad, 164 Mo. l. c. 199.   (5)   Jurymen may compute the average of their respective individual judgments when trying to arrive at the amount of a verdict without being guilty of misconduct. Jobe v. Weaver, 77 Mo. App. 671.

### STATEMENT.

Channing avenue, in the city of St. Louis, runs north and south and crosses Lucas avenue, which runs east and west, at right angles.   In Lucas avenue the defendant has a double street railway track over which it operates its cars by electric power.   Cars traveling east run on the south track.   The plaintiff had for ten years been in the moving and packing business in the city of St. Louis.   On the first day of June, 1900, he was driving his moving van, heavily loaded, north on Channing avenue; when he reached its intersection with Lucas avenue, he drove his team to within six or seven feet of the south rail of the railway track and stopped for an east-bound car to pass.

Plaintiff testified that as soon as the car passed he looked both ways on Lucas avenue but neither saw nor

heard a car, and drove ahead; that when the front wheels of his wagon struck the south rail of the railway track he heard a noise, looked west and saw a car in about two hundred feet of him approaching at a rapid rate of speed from the west; that he thought he had time to clear the track before the car reached him and whipped up his horses, but failed to get his wagon across the track in time to avoid a collision; that the hind wheel of his van was struck, the van was broken up, damage was done to his horses, one of them dying of the injury; that his clothing was torn and he was badly and permanently injured.

He further testified that his team was well broken, was easily handled and was under control when he was crossing the track. That the grade on Lucas avenue west of Channing raises about sixty feet to the mile; that he supposed the reason he did not see the car before starting across the tracks was that his view was obstructed by the foliage of shade trees standing on the side of the street where he had stopped.

The evidence of witnesses for the plaintiff, and of one for the defendant, was to the effect that the car was running at a speed of from fifteen to twenty miles per hour; that the car was from two hundred to two hundred and fifty feet west of the crossing when plaintiff's horses were on the south track, and that the car could have been stopped or checked in time to have avoided the collision; that the gong was not sounded and the plaintiff's evidence tends to prove that the motorman in charge of the car made no effort whatever to stop it until he was within fifteen or eighteen feet of the wagon, when it was too late to avoid the collision.

Plaintiff read in evidence the speed ordinance, limiting the speed of street railway cars to eight miles an hour, and what is commonly known as the vigilant-watch ordinance.

On the part of the defendant the evidence tends to show that the car was running at a speed of eight miles

per hour; that the plaintiff could have seen the car a block or more west of him had he looked; that without looking or listening he drove his team across the track when the car was so near the crossing that it was impossible to stop it in time to avoid the collision; that the motorman sounded the gong vigorously and continuously from the time he discovered plaintiff near the track to give him warning of the approach of the car and that after plaintiff started across the track he did all in his power to stop the car.

The verdict was for plaintiff, the jury awarding him damages in the sum of $2,500 from which plaintiff appealed.

BLAND, P. J. (after stating the facts as above).— 1.   Defendant offered a peremptory instruction to find for it.   The refusal of the court to grant this instruction is assigned as error.   Defendant insists that the evidence and physical facts show that had plaintiff looked west, before attempting to cross the track, he would have seen the car, and that his evidence that he did look and saw no car, should be rejected.   It seems to us that there is a great deal of force in this contention.   Every witness, both for plaintiff and defendant, who saw the car coming, testified to seeing it before and at the time plaintiff started to drive across the track.   Plaintiff, however ascribed his inability to see the car to an obstruction caused by foliage of nearby trees.   It is not shown that this obstruction was not present.   In this state of evidence the question was one of fact for the jury to say whether plaintiff looked and did not see the car at the time he drove upon the track, or whether without looking he drove upon it, and not for the court to declare as a matter of law that the physical facts show that the plaintiff, without looking, negligently drove upon the track in the face of the approaching car.

2.   For the plaintiff the evidence tends to show that the car was running at a prohibited rate of speed,

to-wit, at from fifteen to twenty miles per hour. This was negligence *per se* and the reasonable inference from this evidence and from the fact that the car was from two hundred to two hundred and fifty feet away when plaintiff drove on the track, is that had the car been running at a lawful rate of speed plaintiff would have cleared the track before the car arrived and the accident would not have happened.

3.   Turning to another phase of the evidence offered by the plaintiff, it appears that the car was from two hundred to two hundred and fifty feet west of plaintiff when his horses were in the south track upon which the car was running and that the car could have been stopped within a shorter space than two hundred feet. That plaintiff and his team were in plain view of the motorman.   If so, then it was the duty of the motorman to have seen the perilous situation of the plaintiff and to have stopped the car in time to avoid injuring him, and his omission to do so was the proximate cause of the injury, while the act of the plaintiff in driving on the track, without looking or listening, did not necessarily produce the injury and was not the proximate cause thereof, though the injury could not have happened had he not driven on the track.   Baltimore, etc. Railroad Co. v. State, use of Trainor, 33 Md. 542; Troy v. Railroad, 99 N. C. 298.   According to plaintiff's evidence, the motorman had the last fair chance of avoiding the injury and is not excused by the prior negligence of the plaintiff.   Klockenbrink v. Railroad, 81 Mo. App. l. c. 356, recently affirmed by the Supreme Court; Hutchinson v. Railway, 88 Mo. App. 376; McAndrews v. Railway, 83 Mo. App. 233; Reardon v. Railway, 114 Mo. l. c. 405; Morgan v. Railway, 159 Mo. l. c. 280.

The prior negligence of the plaintiff, if he was negligent, is not, in such circumstances, deemed in law to have contributed to his injury.   The law, in recognition of the high duty which one operating dangerous appliances and vehicles upon a public highway for hire—the

duty to keep a vigilant watch and on the first appearance of danger to use every means in his power to avoid injury to others—holds defendant responsible for the injury because it was its duty and was within its power to avoid the collision by the exercise of ordinary care, which duty the motorman neglected to perform. In this class of cases the law excuses the defendant's negligence where the negligence of the plaintiff directly contributed to his injury, that is, where the negligence of the plaintiff and that of the defendant are so concurrent in point of time and place as to have given the defendant no fair opportunity to avoid the injury. Moore v. Lindell Railway Co., 75 S. W. (Mo.) 672. The instructions asked and given for both sides submitted the case to the jury upon this theory of the law.

4.   Defendant asked the following instruction:

"The court instructs the jury that it is improper and illegal for them to make or arrive at a verdict by agreeing that each juror shall set down the amount, if any, which he is in favor of awarding the plaintiff and dividing the aggregate by twelve and that the result thus obtained should be their verdict, and that a verdict thus obtained is contrary to law."

The court gave the above instruction after modifying it by adding the following clause:

"But if they do not agree that the amount so obtained should be their verdict, but assent and voluntarily agree upon such amount in the manner above specified, and without reference to such manner, then the verdict is not contrary to law."

In Job's Admr. v. Weaver, 77 Mo. App. l. c. 671, the Kansas City Court of Appeals said: "Jurymen may compute the average of their respective individual judgments, when trying to arrive at the amount of a verdict, without being guilty of misconduct. This only becomes wrong when it is agreed beforehand that the verdict shall be in accordance with such result."

This court, in Fields v. Railroad, 80 Mo. App. l.

c. 608, speaking of quotient verdicts, said: "If, however, the amount named by each juror is in the nature of a proposition, and there is no previous agreement to abide by the average amount, but the average amount is finally agreed on by the entire jury as their verdict, there would be nothing wrong in this. Such a verdict would be the deliberate judgment of the entire jury, which satisfies the law. 2 Thompson on Trials, section 2602, and authorities cited."

In both of these cases an attempt was made to prove the verdict rendered by the juries were quotient verdicts, and what is said has reference to the proofs offered.

We think it may be conceded that when the jurors agree that the verdict shall be for the plaintiff or defendant, but differ as to the amount of damages that shall be allowed, they may, as an experiment, without any agreement, or thought of adopting the quotient as a verdict, set down in a column the amount of damages each juror is in favor of awarding, add this column up and divide the total by twelve and afterwards agree that the quotient thus found shall be their verdict; but it seems to us that to instruct a jury that they may do this is to invite them to find a quotient verdict in that way and we do not think it correct practice to so instruct the jury. But there is not a scintilla of evidence that the jurors assessed the damages in this manner. They were told by the court that they might do so, but it does not follow that they adopted that experiment. The presumption is that they adopted the proper method of finding the amount of damages. Fields v. Railroad, supra. We can not overturn this presumption without evidence.

3. The answer was a general denial and the plea of contributory negligence.

For plaintiff the court instructed the jury as follows:

"1. If the jury find from the evidence in the case

that the defendant, on the first day of June, 1900, was operating the railway and car mentioned in the evidence, for the purpose of transporting persons for hire from one point to another in the city of St. Louis, a street railway company; and if the jury find from the evidence on said day, Lucas avenue and Channing avenue at the places mentioned in the evidence were open, public streets within the city of St. Louis; and if the jury find from the evidence that on said day the plaintiff was driving his team and wagon northward on Channing avenue at its intersection with Lucas avenue, and that whilst doing so defendant's servants in charge of its east-bound car on Lucas avenue caused and suffered said car to collide with plaintiff's said wagon, and that thereby the plaintiff's horses, wagon and harness were injured and plaintiff was injured on his person; and if the jury find from the evidence that as said car ran down east on Lucas avenue, defendant's motorman on said car saw or by the exercise of a vigilant watch for vehicles would have seen the plaintiff drive his team and wagon to and upon the defendant's track, and thereafter by stopping said car in the shortest time and space practicable, with the means and appliances at hand, and with safety to said car and its passengers, would have prevented said collision and negligently failed to do so; and if the jury find from the evidence that the plaintiff was exercising ordinary care to look out for said car and avoid injury therefrom, then the plaintiff is entitled to recover.

"2. The court instructs the jury that the ordinance of the city of St. Louis read in evidence prohibited the defendant and its servants in charge of its car mentioned in the evidence from running said car at a speed in excess of eight miles per hour; and if the jury find from the evidence that the defendant and its servants in charge of said car were running it at a speed in excess of eight miles an hour just before and at the time

of the collision mentioned in the evidence; and if the jury find from the evidence that said excessive speed caused said collision and plaintiff's injuries; and if the jury find from the evidence that the plaintiff was exercising ordinary care in looking out for said car and in trying to avoid injury thereby by starting across the track and whilst crossing said track, then plaintiff is entitled to recover, and the verdict should be for the plaintiff.

"3. Although the jury should find from the evidence that the plaintiff did not exercise ordinary care to look or listen for a car or in driving upon the track, yet if the jury find from the evidence that defendant's motorman on its car saw, or by keeping a vigilant watch would have seen, the plaintiff's team and wagon approach defendant's track, and attempt to cross same, and that plaintiff and his vehicle were in danger from said car, and thereafter by stopping said car in the shortest time and space practicable with the means and apparatus at hand and consistent with the safety of said car and its passengers, would have prevented the collision and plaintiff's injuries, then plaintiff is entitled to recover. By the term, 'ordinary care,' used in the instructions is meant that degree of care that would be used by a person of ordinary prudence under the same or similar circumstances."

The court gave the following instructions for the defendant:

"1. The court instructs the jury, as a matter of law, that the defendant's servants in charge of the street car which struck the plaintiff's wagon had a right to assume the plaintiff was rational and in full possession of his reasoning faculties and would exercise ordinary care to keep himself out of danger of a collision with said car until they saw something in his conduct which was inconsistent with such assumption; and if the jury believe from the evidence that when the persons in charge of said car first came in sight of the

plaintiff's furniture wagon on the occasion in question, plaintiff and his furniture wagon were so far removed from the track of defendant as to be free from danger of collision then defendant's servants in charge of said car had a right to assume that he would remain at such safe distance, unless there was something in the circumstances calculated to rebut such presumption.

"2.    The court instructs the jury that the law makes it the duty to a person who is about to go upon a street railroad track to look and listen for approaching cars, in both directions and if you believe from the evidence that at the time George Kolb, plaintiff, went upon the track on which he was struck by defendant's car, he could by looking have seen or by listening have heard the approach of the car by which he was struck and avoid the collision therewith, but did not so look and listen and was injured in consequence thereof, your verdict must be for the defendant, unless you further believe, from the evidence in the case that defendant's servants in charge of said car failed to exercise all reasonable efforts consistent with the safety of the passengers on said car to avoid colliding with plaintiff's furniture van after they discovered, or by the exercise of ordinary care would have discovered, his perilous position in driving on defendant's track, in time to have averted the collision.

"3.    The court instructs the jury that the plaintiff was bound to know that the crossing of a street railroad was dangerous, and that plaintiff was guilty of negligence, unless he approached it as if it were dangerous and if the jury believe from the evidence in the case that the plaintiff, as he approached the street railroad track, did not look and listen to ascertain if a street car was coming, and observe all prudent and reasonable precautions to avoid danger but on the contrary, drove his team and wagon directly on the track where the accident happened without the exercise of ordinary care and precaution to ascertain if a street car was coming,

then he was guilty of such negligence as will prevent a recovery in the case, and your verdict must be for the defendant, unless the jury believes from the evidence that the servants of the defendant in charge of said car could with safety to their passengers have avoided the injury to plaintiff by the exercise of ordinary care; and the jury is instructed that by 'ordinary and reasonable care' is meant such care as an ordinarily prudent person would exercise under similar circumstances.

"4. The court instructs the jury that although they may believe from the evidence that the defendant was guilty of negligence upon the occasion in question, and that such negligence directly contributed to the injury complained of, yet if the jury further believe from the evidence that the plaintiff was also guilty of negligence directly contributing to the injury and without which it could not have occurred, then your verdict will be for the defendant; unless the jury further find from the evidence that defendant's servants in charge of said car before the injury discovered, or by the exercise of ordinary care could have discovered, the perilous situation in which the plaintiff was placed and neglected to use the means at their command to prevent plaintiff's injury.''

Defendant insists that the first and third instructions given for the plaintiff impose a higher degree of care and responsibility on defendant than the law requires. The plaintiff and defendant both had the right to use the street. The right of the one was not paramount to that of the other in this respect. Oates v. Railway, 168 Mo. l. c. 544. The weight and speed of the vehicle operated by defendant made it dangerous to all other vehicles traveling along or across its tracks. St. Louis is a populous city. Its streets in the day time are thronged with vehicles traveling on and across the street railway tracks; in such circumstances to require a motorman in charge of a car to keep a vigilant watch for other vehicles and on the first appearance of danger to

stop or check his car in the shortest time and space practicable, is to require of him nothing more than ordinary care, such care as any humane person would be expected to exercise in like circumstances. Gebhardt v. St. Louis Transit Co., 97 Mo. App. 373 71 S. W. 450, and cases cited.

The instructions given, except the one in respect to the method of finding a verdict, properly declared the law of the case and fairly and fully presented every issue of fact raised by the pleadings and of which there was any evidence and are approved.

The judgment is affirmed. *Reyburn* and *Goode*, *JJ.*, concur.