# LEO J. SEMPLE, Respondent, v. UNITED RAILWAYS COMPANY OF ST. LOUIS, Appellant.

### Springfield Court of Appeals, December 5, 1910.

1. **PRACTICE: Demurrer to Evidence.** Where a defendant offers a demurrer at the close of the plaintiff's ev'dence, which is overruled, and the defendant then offers testimony, in so doing the first demurrer is waived and plaintiff's right to recover is to be determined from all the evidence in the case.

2. **STREET RAILWAYS: Negligence: Contributory Negligence: Collision With Vehicle: Humanitarian Doctrine.** While plaintiff was driving his wagon across a street railway track the vehicle was struck by a street car. Plaintiff from his own testimony was guilty of negligence in failing to look in both directions for cars, but from defendant's witnesses there was evidence tending to show that the motorman might, by the exercise of proper care, have stopped the car after he saw plaintiff in a perilous position. *Held*, that it was proper to submit the case to the jury under the humanitarian doctrine.

3. **CONTRIBUTORY NEGLIGENCE: Street Railways: Crossing Track.** If a person goes upon a track directly in front of an approaching car, and so close that the servant in charge of the car could not, with the means at hand and with proper regard for the safety of the car and its passengers, have stopped the car and prevented a collision, an injury to such person the company is not liable.

4. ————: ————: ————: **Humanitarian Doctrine.** If a person was guilty of negligence in an attempt to cross the track without looking for an approaching car, but the servant in charge of such car saw the plaintiff in a position of peril, or by the exercise of ordinary care might have seen him in such position in time to have avoided injuring him, and failed to do so, then the company is liable, notwithstanding the negligence of plaintiff.

5. **STREET RAILWAYS: Negligence: Duty of Motorman: Presumption.** A street car motorman has the right to presume that an adult will not undertake to cross the track in front of an approaching car, that when he gets near the track he will stop and look for cars. It is only when the motorman discovers that the traveler does not intend to stop, and is in a position of peril that it becomes the duty of the motorman to attempt to stop his car.

6. PRACTICE: Objections to Evidence. As a general rule testimony should be objected to when offered, and it is too late to raise the question of incompetency of the evidence under the pleading to move to have it excluded after it has been admitted without objection.

7. PLEADING: Proof: Personal Injuries. In a personal injury case the allegations of the petition are examined and *held* sufficient to authorize the introduction of evidence that plaintiff's mind had been rendered weak as a result of his injuries.

8. EVIDENCE: Admissions: Rejecting Deposition of Plaintiff: Harmless Error. In a personal injury case it was held error for the trial court to refuse to allow the defendant to introduce plaintiff's deposition to show in what part of the street plaintiff was driving at the time he was struck by the car, but under the admissions of plaintiff as to what he did state in his deposition and in view of the fact that it was not claimed that he admitted in his deposition that he was on the side of the street that defendant contended he was on, the error in rejecting the deposition was held harmless.

9. PLEADING: Negligence: Instructions: Street Railways. In a suit for damages for personal injuries received by plaintiff in being struck by a street car while driving across the track in a wagon, the petition is examined and *held* sufficient to authorize an instruction submitting to the jury the question of the negligence of defendant's motorman in failing to stop the car upon discovering plaintiff's perilous position.

10. INSTRUCTIONS: Loss of Time: Damages: Negligence: Personal Injuries. In a personal injury case an instruction given for plaintiff permitted a recovery for the value of time lost and the evidence showed that plaintiff's wages continued, but that he paid another to work in his place. *Held*, that the instruction was proper as the amount paid might be considered a loss of time as it was an expense caused by the plaintiff being unable to put in his own time at his work.

11. ————: Admission Against Interest: Presumptions. It is not reversible error to refuse an instruction to the effect that if plaintiff knowingly made a statement against his interest in the case, the law presumes such statement to be true.

Appeal from St. Louis City Circuit Court.—*Hon. Eugene McQuillin*, Judge.

AFFIRMED.

*Glendy B. Arnold* for appellant.

(1)   The court erred in refusing to direct a verdict for the defendant.   Markowitz v. Railroad, 186 Mo. 350; McGee v. Railroad, 214 Mo. 541; Rissler v. Transit Co., 113 Mo. App. 120; Hawkins v. Railroad, 135 Mo. 524; Boyd v. Railroad, 105 Mo. 372.   (2)   The verdict of the jury is the result of passion and prejudice.   Lehnick v. Railroad, 118 Mo. App. 611.   (3) The court erred in permitting plaintiff to testify, over defendant's objections, that his mind had been rendered weak as the result of his injuries when there was no allegation in the petition averring such an injury. Moore v. Transit Co., 226 Mo. 698.   (4)   The court erred in refusing to permit the defendant to read in evidence the questions and answers contained in plaintiff's deposition as an admission against interest and evidence tending to impeach the plaintiff as a witness, the foundation therefor having been duly laid by defendant.   Batsch v. Railway, 122 S. W. 371. (5)   Plaintiff cannot sue on one cause of action and recover on another.   Waldhier v. Railroad, 71 Mo. 519; Heinzie v. Railroad, 182 Mo. 428.   (6)   The third paragraph of plaintiff's instruction on the measure of damages is erroneous, because the evidence shows that plaintiff continued to draw his wages after the collision, without diminution.   Davidson v. Transit Co., 211 Mo. 346.   (7) The court erred in refusing defendant's second instruction.   Ephland v. Railroad, 137 Mo. 198; Sheppard v. Railroad, 189 Mo. 369; McCaffery v. Railroad, 192 Mo. 159; Conner v. Railroad, 181 Mo. 415; Montgomery v. Railroad, 181 Mo. 498; Randolph v. Railroad, 125 Mo. App. 620; Sepetowski v. Railroad, 102 Mo. App. 121; Irwin v. Railroad, 94 Mo. App. 297; McGinnis v. Printing Co., 122 Mo. App. 227.

*Sterling P. Bond* for respondent.

(1)   The evidence adduced in behalf of the respondent was ample to take the case to the jury, and where defendant does not stand on its demurrer at close of plaintiff's case, but produces its own evidence, it must be held to have waived the first demurrer.   Fry v. Railroad, 200 Mo. 381; Porter v. Stock Yards Co., 111 S. W. 1137; Forbes v. Dunnavant, 198 Mo. 201; Smiley v. Cockrell, 92 Mo. App. 107.   (2)   Where there is substantial evidence to sustain plaintiff's charge of negligence, and the jury had returned a verdict for the plaintiff, and its finding has received the approval of the trial court, the appellate court will not interfere.   Franklin v. Railroad, 188 Mo. 542; Cook v. Railroad, 57 Mo. App. 480; Lee v. Conran, 111 S. W. 1155.   (3)   It is the well settled rule of practice in this jurisdiction that when the facts are disputed and are such that different conclusions may be drawn therefrom, the case is one for the determination of the jury and not for the court.   Bender v. Railroad, 137 Mo. 240; Koontz v. Railroad, 121 Mo. 652; O'Melia v. Railroad, 115 Mo. 205; Roddy v. Railroad, 104 Mo. 255; Nagel v. Railroad, 75 Mo. 665; Zellars v. Water & Light Co., 92 Mo. App. 120; Fogarty v. Transfer Co., 160 Mo. 509.

GRAY, J.—This is a suit to recover damages for personal injuries.   The plaintiff alleges in his petition that on the 17th day of September, 1907, at the intersection of defendant's tracks and Walton avenue, a public street in the city of St. Louis, he was injured in a collision between a wagon he was driving and a westbound car of defendant.

As the defendant challenges the sufficiency of the petition to authorize certain instructions, it is proper to copy the following therefrom:   "Plaintiff states that the defendant's motorman in charge of said car

negligently and carelessly failed to comply with the vigilant watch ordinance of the city of St. Louis, Missouri, which provides that the motorman and servants of the defendant in charge of said street car shall keep a vigilant watch for all vehicles and persons either on or approaching its street car track and on the first appearance of danger to such persons or vehicles stop its car in the shortest time and space possible; that had the defendant's motorman in charge of its said car kept a vigilant watch, as provided by said ordinance, he saw or could have discovered the vehicle in which plaintiff was in, in time to have checked and stopped said car in the shortest time and space practicable, with the means and appliances at hand and with safety to said car and its passengers, and thus prevented striking said vehicle and injuring plaintiff, but he negligently and carelessly failed to do so thereby directly contributing to plaintiff's injuries. That by reason of the defendant's motorman so running and operating said car and violating the said ordinance, he negligently and carelessly ran said car into the vehicle in which plaintiff was riding, thereby causing and directly contributing to the plaintiff's injuries as hereinafter alleged.''

The answer was a general denial and the further defense that plaintiff's injuries, if any, were caused by his own carelessness and negligence. There was a trial by jury in October, 1909, resulting in a verdict and judgment in favor of the plaintiff in the sum of fifteen hundred dollars, from which the defendant appealed.

It is defendant's first contention that the court erred in refusing to direct a verdict for the defendant. The defendant offered a demurrer at the close of the plaintiff's case, but the same was overruled and the defendant then offered testimony. In so doing, the defendant waived the first demurrer, and its liability is now to be determined from all the evidence in the case. [Fry v. R. R., 200 Mo. 377, 98 S. W. 566.]

Walton avenue runs north and south in the city of St. Louis. The defendant at the time complained of, and for a long time prior thereto, maintained a double track street railroad, operated by electricity. The railroad approached Walton avenue, running from the southeast to the northwest until it reached the east side of Walton avenue, and then turned and the line of the road was almost due west from that point. The cars running east used the south track, and the cars running west, the north track.

The plaintiff, about 6:30 in the morning, and at a time when it was daylight, was driving a milk wagon north, near the center but on the east side of Walton avenue. According to his testimony, he could not see cars approaching Walton avenue until he had reached a point about thirty feet from the south side of the tracks, and that when he got to that point, he could see down the track east about two hundred feet, and to the west about one hundred feet; that he was driving about three miles an hour, and as he approached the point where he could see the cars, he looked and listened and started to drive across the track. He also admitted that after he looked to the east from the point thirty feet south of the track, he did not again look in that direction, but did look to the west for a car coming from that direction. When his vehicle had almost crossed the north track, it was struck by a westbound car, and he was injured.

The plaintiff offered a witness, who testified he saw the collision; that he was standing on the north side of the tracks and saw the plaintiff approaching the tracks and the west-bound car when it was about one hundred feet from the point of collision, and that the car was running about eighteen miles an hour. There was an allegation in the petition that the car was running in excess of the limit prescribed by ordinance in the city of St. Louis, but this charge was abandoned and an instruction was also given denying

the right to recover on that allegation of negligence.

The plaintiff's witness testified that plaintiff was traveling three or four miles an hour, and when the car was about one hundred feet away, he first observed it, and at that time the horse was on the south track. The evidence shows the tracks were four feet ten inches wide, and the space between the two tracks, about the same. The witness admitted on cross-examination, that he observed the motorman trying to stop his car, but he did not know how far the car was away when the motorman started to do so. On direct examination, this witness first testified that he did not see the car until after the collision, but he afterwards changed his testimony, and it was for the jury to say what weight his testimony was entitled to.

The plaintiff offered additional testimony tending to show that a car running from fifteen to eighteen miles an hour could be stopped in a distance of seventy-five to one hundred feet.

If the plaintiff's case rested solely on the evidence offered by him, we think he should have been non-suited. His testimony to the effect that before driving on the track, and at a time when he was almost forty feet south of the north track he looked and saw no car within two hundred feet of the place where he would cross the track, and that he was driving about three miles an hour, and that he knew the cars were authorized to run fifteen miles an hour, and without looking again, although if he had he could have plainly seen the car approaching, he drove leisurely onto the track and did not see the car and made no effort to see it until his wagon was struck, shows he was unquestionably guilty of negligence. This being true, the only theory upon which he was entitled to go to the jury was the humanitarian doctrine. [Barrie v. St. Louis Transit Co., 102 Mo. App. 87, 76 S. W. 706.]

Under that doctrine, if a person stepped on the track directly in front of an approaching car and so close that the servant in charge of the car could not, with the means at hand and with proper regard for the safety of his car and its passengers, have stopped his car and prevented a collision and injury to such person, the company is not liable. [Moore v. Railroad, 176 Mo. 528, 75 S. W. 672; Rissler v. Transit Co., 113 Mo. App. 120, 87 S. W. 578; McGee v. Railroad, 214 Mo. 530, 114 S. W. 33; Matz v. Railroad, 217 Mo. 275, 117 S. W. 584; Dey v. Railroad Co., 120 S. W. 135.] But if a person was guilty of negligence in attempting to cross the track without looking for an approaching car, yet if the servant in charge of such car saw the plaintiff in a position of peril, or by the exercise of ordinary care might have seen him in such position in time to have avoided the injury, by the exercise of ordinary care, and failed to do so, then the company is liable, the negligence of plaintiff notwithstanding. [Authorities above cited; Kolb v. Transit Co., 102 Mo. App. 143, 76 S. W. 1050; Mannes v. Railroad, 130 S. W. 87; Parish v. Railway, 126 S. W. 767; Roenfeldt v. Railroad, 180 Mo. 554, 79 S. W. 706.]

The plaintiff being an adult, the motorman had the right to presume that he would not undertake to cross the track in front of his car, when by the exercise of ordinary care he could have seen the car approaching, and must have known that if he proceeded on his way there was danger of serious injury being received by him, and therefore the motorman was not required, under the humanitarian doctrine, to stop his car because he saw the plaintiff approaching the track and some feet away. He had the right to presume that plaintiff, when he got near the north track, would stop and look for the car, and he knew if he did do so, he would see it and stop his horse until the car had passed. [Childress v. Railroad, 141 Mo. App. 667, 126 S. W. 169.]

It only became the duty of the motorman to make an effort to stop his car when he discovered that plaintiff was in a perilous position and was not going to stop his horse and let the car pass. The testimony of plaintiff's witness shows, that when the car was within about one hundred feet of the point of collision, the plaintiff was just coming on the south track. It cannot be said that prior to that time the motorman was required to take steps to protect the plaintiff under the humanitarian doctrine. And the plaintiff's evidence shows that immediately thereafter, the motorman was seen to be stopping his car, and that the car did not run but a few feet after it struck the plaintiff's wagon. In other words, the car was within one-hundred feet of the point of collision when according to plaintiff's testimony, it was observed that he was going to drive on the south track.

The jury, however, had the right to consider the defendant's testimony. The motorman in charge of the car testified in behalf of the defendant, as follows:

"Q. Where was this wagon when you first saw it? A. It was about thirty feet south of our tracks.

"Q. Which track? A. The east-bound track.

"Q. What did you do when you saw it? A. I used my air brakes.

"Q. What else did you do? A. Reversed the car.

"Q. What rate of speed were you going? A. Ten or twelve miles an hour.

"Q. What did you see the driver do, if anything? A. He whipped up his team.

"Q. Where was he when he whipped up his horse? A. About thirty feet from the track, the horse wanted to stop, and he whipped up his team right in front of me.

"Q. What did you do with reference to stopping the car? A. Just as soon as I seen what he was going to do, I reversed my car, and caught the air.

"Q. When you first saw him, you say he was twenty or twenty-five feet from the west-bound track driving on? A. About thirty feet, or something like that.

"Q. That was the first time you discovered he was in danger of being hit, was it? A. Yes, sir.

"Q. You mean his horse was going north—that would put his horse about twenty or twenty-five feet south of the south rail of the east-bound track, wouldn't it? A. The west-bound track.

"Q. And was his wagon and his horse twenty-five or thirty feet south? A. His horse and wagon, he was coming into view, something like that."

Edward C. Rollman testified in behalf of defendant that he was on the front end of the car; that he saw the horse as soon as it came in view about twenty-five or thirty feet south of the south track, and at that time the car was from one hundred and fifty to two hundred feet from the point of collision, and going about twelve miles an hour.

The motorman testified, that when the wagon was about thirty feet south of the track, he observed the plaintiff was going to try to cross, and he set his brakes and reversed the car as soon as he observed that fact. If the car was going fifteen miles an hour and the plaintiff three, as some of the testimony tended to show, then the motorman saw the plaintiff when the car was at least one hundred and fifty feet east of the point of collision, and if the car was going twelve miles an hour, as claimed by the defendant, then the point of collision was at least one hundred and twenty feet west of where the car was at the time the motorman observed the plaintiff in a perilous position.

Mr. Rollman's testimony showed that the car was at least one hundred and fifty feet from the point of collision when the horse was at the point where the motorman first observed it. And the testimony of this witness is corroborated by the physical facts. If

the horse was thirty feet from the track and going about three miles an hour and the car twelve to fifteen, then they would have reached the point of collision at about the same time. If the motorman did see the horse about thirty feet from the track as he stated he did, and the car was running about ten or twelve miles an hour, and the horse was traveling three or four, the car must have been more than one hundred feet east of the point of collision, or it would have passed the point before the horse reached it, while the testimony shows that the horse had passed over the north track and so had all but the rear of the wagon.

In addition to the above the motorman testified that he saw the horse come into view and at that time the horse was within twenty-five to thirty feet south of the tracks, and when he saw that he set his brakes and reversed his car. The testimony of the other witness for the defendant is to the effect that he also saw the horse come into view, and at that time the car was at least one hundred and fifty feet east of the point of collision. The jury, therefore, had testimony to the effect that the motorman, when his car was one hundred and fifty feet east of the point of collision, saw that the plaintiff was in a perilous position, and he claims that he at once attempted to stop his car. And there was testimony tending to prove that a car going much faster than defendant claimed its car was, could have been stopped eighty or one hundred feet.

On the testimony of the motorman and the witness, Rollman, the plaintiff's case was one for the jury, and the court did not err in refusing the demurrer to the evidence.

The defendant's second point is that the verdict is the result of passion and prejudice. This claim is based upon the fact that the plaintiff's testimony and that of his witness, was contradicted by a number of witnesses offered by the defendant, as to how the accident happened. But as we have just stated, plaintiff's

right to recover is not based on his evidence or the evidence of his witness, but upon the testimony of the defendant's witnesses.

The next assignment of error is that the court erred in permitting plaintiff to testify, over defendant's objections, that his mind had been rendered weak as the result of his injuries, as the petition did not aver facts authorizing such evidence.

The petition alleges that "plaintiff's right wrist was sprained, his right hand and arm were bruised and contused; his back was bruised and contused; his head and spine were bruised, jarred and shocked, and he was so ruptured internally that he was caused to have, and continues to have hemorrhages; that the injuries aforesaid and the great fright occasioned from such injuries and collision seriously injured his nervous system and have caused him headaches and sleeplessness; that by reason of said injuries he has been, and will be, unable to sleep as formerly; that he has had, and continues to have, painful headaches; that his appetite and digestive organs have become impaired; that he has suffered, and will in the future suffer, great mental pain and bodily anguish," etc.

The abstract shows the defendant did not object when the testimony was offered, but raised the question by asking to have the testimony excluded. This was too late. [State v. Forsha, 190 Mo. 296, 88 S. W. 746; Lutz v. Ry. Co., 123 Mo. App. 499, 100 S. W. 46.] But waiving this point the allegations in the petition were sufficient to authorize the introduction of the testimony, and the insufficiency of the petition for that purpose was the only objection made to the testimony. [Fledderman v. Transit Co., 134 Mo. App. 199, 113 S. W. 1143; Young v. Railroad, 126 Mo. App. l. c. 12, 103 S. W. 135.]

If the plaintiff had offered no testimony tending to show the condition of his mind was due to his injuries, and the defendant claimed that the condition

of his mind was not a natural result of the injuries received, a motion to exclude the testimony at the close of plaintiff's case, or an instruction denying the right of plaintiff to recover damages for that condition, was the proper practice. [Moore v. Transit Co., 226 Mo. l. c. 705, 126 S. W. 1013.]

The court refused to permit the defendant to read to the jury the testimony of the plaintiff contained in a deposition which had been taken. When the plaintiff was upon the stand, he was asked if when his deposition was taken, he had not stated that he was driving north in the center of Walton avenue at the time of the collision. At the trial he had testified he was driving on the east side of Walton avenue, and the defendant sought to show that he was driving in the center of the street. This testimony was material, because the evidence shows that the car struck the wagon with such force as to push it across to the west side of Walton avenue. The defendant maintained that the wagon was on the west side of the avenue at the time of the collision. The plaintiff admitted on cross-examination, that he had testified, when the deposition was taken, that he was near the center of the street, but on the east side, and this was what he was claiming at the trial. The court should have permitted the defendant to read the deposition to the jury. But in as much as the plaintiff testified that he was near the center of the street, but on the east side, and had not testified in his deposition that he was on the west side of the street, we do not believe the action of the court was material error.

Defendant contends that the instructions authorized a verdict in favor of the plaintiff on a cause of action not contained in the petition. It is claimed the instructions authorized a recovery on the ground that the motorman failed to stop the car within the shortest time and space practicable upon the appearance of danger to the plaintiff, and that the petition charges

the negligence consisted of the motorman's failure to keep a vigilant watch for the presence of persons upon or near the track and does not charge any negligence in failing to stop the car after the plaintiff was or should have been discovered.

The testimony as to the action of the motorman after discovering the plaintiff upon or near the track, went in without objection. But we do not put our opinion upon that ground. The petition, we believe, charges that if the motorman was performing his duty he saw the plaintiff's position in time to have stopped his car, but that he negligently and carelessly ran his car into the vehicle. If the petition had simply stated that if the motorman had kept a vigilant watch, he would have discovered the vehicle in which plaintiff was in, then there might be some ground for defendant's contention. But the petition alleges that if the motorman in charge of said car, kept a vigilant watch, as provided in said ordinance, he saw the plaintiff.

In plaintiff's instruction on the measure of damages, the court included the following: "The amount and value of time, if any, lost to the plaintiff."

The plaintiff testified that he was unable to work for six weeks, and that he hired another man to take his place during that period, and paid him one dollar a day and his meals.

The defendant contends that in as much as plaintiff's wages continued, he lost no time, and therefore, was not entitled to recover anything therefor. The amount paid might be considered a loss of time, because if plaintiff could have worked, he would have saved what he had to pay to the other. As said by Judge GANTT, in Slaughter v. Railroad, 116 Mo. l. c. 275, 23 S. W. 760: "The distinction between 'loss of time' and 'loss of earnings for that time,' does not exist in law. The damages to be awarded in either case is the pecuniary value of the time lost, and either

expression sufficiently indicates the measure." To the same effect is Grady v. Transit Co., 102 Mo. App. 212, 76 S. W. 673.

The defendant offered testimony tending to prove that the plaintiff, within a few minutes after the accident, said he was not hurt. The plaintiff denied making the statement and the defendant asked an instruction to the effect that if the jury found that plaintiff with knowledge of all the facts, knowingly made a statement against his interest in the case, the law presumed such statement to be true. The court refused the instruction, but gave a general instruction on the credibility of the witnesses and the weight to be given to their testimony. We have not been able to find any case in this state where it was held reversible error to refuse such an instruction in a civil suit. The judgment is affirmed. All concur.