J. W. JACKSON, Respondent, v. SOUTHWEST MISSOURI RAILROAD COMPANY, Appellant.

Springfield Court of Appeals, May 5, 1913.

1. PLEADINGS: Amendments: Refusal to Grant Continuance: Not Error, When. In an action against a street railroad company for personal injuries, at the close of his evidence, plaintiff by leave of court, amended his petition by inserting a third ground of negligence which was substantially the same as one alleged in a count of the original petition. *Held*, that the refusal of the trial court to grant a continuance to defendant on the ground of surprise was not such an abuse of its discretion as to call for a reversal of the case.

2. CARRIERS: Warning Signals Required: Statute Examined. Sec. 3140, R. S. 1909, requiring a bell to be placed on all locomotive engines to be rung at least 80 rods from public crossings and kept ringing until it shall cross the road, or that a steam whistle be attached to the engine and shall be sounded and kept sounding at intervals for that distance, is examined as to its applicability to interurban cars propelled by electricity, and authorities *pro* and *con* are cited.

3. **STREET RAILROADS: Signals of Warning: Crossings.** Persons operating an electric road and its cars are required, regardless of statute, to give at roadway crossings effective and timely warnings, commensurate with the speed and danger likely to result from running the cars.

4. **INSTRUCTIONS: Error in: Appellant Cannot Complain of Error in His Favor.** In an action against a street railroad for personal injuries where several grounds of negligence are alleged, an instruction drawn in the conjunctive, requiring the jury to find defendant guilty of all the acts of negligence charged as the condition of a verdict for plaintiff, furnished no ground for complaint on the part of the defendant, inasmuch as it imposed on the plaintiff the duty of proving more than the law required in order to make a case and was favorable to the defendant rather than adverse.

5. **NEGLIGENCE: Alleging Several Grounds of: Proof of One Sufficient.** In an action against a street railroad company for personal injuries, where an instruction predicates plaintiff's right to recover on several grounds of negligence, all of which must be found for the plaintiff before he can recover, *held* that it is sufficient to sustain a judgment for plaintiff if any one of such grounds constitutes actionable negligence and is supported by the evidence.

6. **NEGLIGENCE: Personal Injuries: Evidence Reviewed.** In an action against a street railroad company for personal injuries on account of negligence, the evidence is examined and reviewed and *held* sufficient to warrant the jury in finding the defendant guilty of actionable negligence.

7. **NEGLIGENCE: Personal Injuries: Contributory Negligence.** In an action against a street railroad company for personal injuries occasioned by a collision between one of defendant's cars and a motor cycle ridden by plaintiff, the evidence is examined and reviewed and *held* to warrant the jury in finding the plaintiff not guilty of contributory negligence.

8. **STREET RAILROADS: Crossings: Duty of Traveler: Contributory Negligence.** A railroad is in and of itself a warning of danger and it is the duty of a traveler crossing same to look and listen for coming trains, and failure to do so is negligence *per se* contributing to any injury received by him, and in such case no amount of negligence on the part of the defendant will warrant a recovery.

9. **RAILROADS: Crossings: Traveler's Duty Continuous: Dependent on Circumstances.** The duty of a traveler approaching a railroad crossing to. use reasonable care to ascertain the approach of a train in dangerous proximity, is a continuous duty. Yet no fixed standard can be set up to govern in all cases;

Jackson v. Railroad.

and to determine whether or not the injured person was guilty of contributory negligence, the method of travel of such person must be considered, also the speed at which he was traveling as well as the speed of the train and whether or not his view was obstructed.

10. **STREET RAILROADS: Crossings: Traveler's Rights and Duties.** A traveler approaching a railroad crossing has a right to presume that the railroad company will run its cars at a lawful rate of speed and that timely signals will be given as the car approaches the crossing. Yet he is not permitted to rely on such presumption to the extent that he may neglect his own duty in using care to look and listen for the approach of such car.

11. **STREET RAILROADS: Crossings: Care Required of Traveler.** A traveler approaching a railroad crossing is only required to use ordinary care to look and listen for approaching cars.

12. **EVIDENCE: Directing Verdict: Province of Court and Jury.** Where the evidence is such that there cannot be two opinions about it, its effect should be declared by the court as a matter of law, otherwise it is a question of fact for the jury.

13. **STREET RAILROADS: Injury by Collision Contributory Negligence.** In an action against a street railroad company for personal injuries occasioned by a collision at a street crossing between one of the defendant's cars and a motor cycle on which plaintiff was riding, the evidence relative to plaintiff's contributory negligence is examined and reviewed. *Held*, that the trial court properly refused to direct the verdict for the defendant on that ground.

14. **INSTRUCTIONS: Refusal: When Proper.** (a) A requested instruction that it was negligence for the plaintiff approaching a railroad crossing on a motor cycle not to stop or check his motor cycle to enable him to see and hear the approaching car, regardless of his speed, was properly refused. (b) An instruction should not be given unless there is evidence on which to base it. (c) Instructions are properly refused when based upon a dismissed count of a petition. (d) Instructions not based upon any issue in the case are properly refused. (e) An instruction should not be given when other instructions sufficiently covering the same matters have already been given.

Appeal from Jasper Circuit Court, Division Number Two.—*Hon. David E. Blair*, Judge.

AFFIRMED.

*McReynolds & Halliburton* for appellant.

(1)   Defendant's peremptory instruction to find for the defendant should have been given and in refusing to give it the court committed error.   Sanguinette v. Railroad, 196 Mo. 466; Hayden v. Railroad, 124 Mo. 566; Huggart v. Railroad, 134 Mo. 673; Schmidt v. Railroad, 191 Mo. 215; Kenney v. Railroad, 105 Mo. 284; Porter v. Railroad, 199 Mo. 82; Baker v. Railroad, 122 Mo. 533; Butts v. Railroad, 98 Mo. 272; Walker v. Railroad, 193 Mo. 453; Guyer v. Railroad, 174 Mo. 344; Green v. Railroad, 192 Mo. 131; Mockowick v. Railroad, 196 Mo. 550; Boyd v. Railroad, 105 Mo. 371; Stoller v. Railroad, 204 Mo. 619; Boring v. Railroad, 194 Mo. 541; Reno v. Railroad, 180 Mo. 469; Hayden v. Railroad, 124 Mo. 566; Kreis v. Railroad, 148 Mo. 325; Hook v. Railroad, 162 Mo. 569; Grout v. Railroad, 135 Mo. 552; Laun v. Railroad, 216 Mo. 563; Holland v. Railroad, 210 Mo. 338; Stotler v. Railroad, 204 Mo. 619; McCreery v. United Railways Co., 221 Mo. 18; Clark v. Railroad, 242 Mo. 570, 148 S. W. 472; Burge v. Railroad, 244 Mo. 76, 148 S. W. 925.   (2)   The court submitted to the jury the question of whether acts of the defendant were negligently done without anywhere defining negligence, which was error.   Cowan v. Phillips, 160 Mo. App. 541; Dalton v. Redemeyer, 154 Mo. App. 197; Cornett v. Railroad, 158 Mo. App. 368; Magrame v. Railroad, 183 Mo. 132; Allen v. Transit Co., 183 Mo. 432.   (3) The defendant's car tracks being laid on its private right of way, running at a speed in excess of that provided by the city ordinances of Webb City is not negligence *per se,* and the court erred in so instructing the jury.   Turney v. United Railways Co., 155 Mo. App. 513.   (4)   Sec. 3140, R. S. 1909, requiring locomotives to give signals at public crossings, does not and cannot apply to electric interurban street rail-

roads.   Fallon v. Street Railway, 50 N. E. 546;
Bank v. Horse Railroad Co., 13 Allen, 105; Transit
Co. v. Andis, 72 N. E. 145; Stranahan v. Railroad, 84
N. Y. 308; Murphy v. Wilson, 27 Alb. Law J. 505.   (5)
Plaintiff's second and third instructions are improper
declarations of the law, in failing to require of plain-
tiff all that the law requires when about to cross a
railroad track, and assuming failure to give warning
sufficient to notify plaintiff of approach of car, and
are in conflict with instruction C, given for defendant.
Barrie v. Transit Co., 102 Mo. App. 87; Asphalt &
Granitoid Cons. Co. v. Transit Co., 102 Mo. App.
469; Fanning v. Transit Co., 103 Mo. App. 151; Reno
v. Railroad, 180 Mo. 469; Fenz v. Railroad, 106 Mo.
App. 154; Watson v. Street Railway, 133 Mo. 246;
Ledwidge v. Transit Co., 73 S. W. 1008; Ries v. Tran-
sit Co., 179 Mo. 11; Gettys v. Transit Co., 103 Mo.
App. 564; Roenfeldt v. Railroad, 180 Mo. 554; Moore
v. Railroad, 176 Mo. 528.   (6) Instruction 1, asked by
defendant, should have been given.   ·The evidence
shows that plaintiff was blind in his left eye and the
authorities are united on the proposition that a per-
son with defective sight or hearing is obligated to use
more care and caution in attempting to cross a rail-
road track.   Cundee v. Railroad, 130 Mo. 142; Paris
v. Railroad, 72 Mo. 169; Tyler v. Sites, Admr., 88 Va.
470; 2 Shear. and Red. on Neg., sec. 481; 2 Wood on
Railroad (Minor's Ed. 1894), pp. 1446, 1556; Booth
Street Railway Law, sec. 386; Patterson's Ry. Ace.
Law, p. 75; Wharton on Negligence (2 Ed.), sec. 307;
Whittaker's Smith on Negligence, p. 403; Maupin v.
Miller, 164 Mo. App. 145, 48 S. W. 141.   (7) A motor-
man on electric railway car is not required to stop or
check his car on seeing a party approaching track
(except children), as he has the right to assume the
party will observe reasonable precautions and pru-
dence to avoid danger, and the court erred in refusing
defendant's instruction K.   Boyd v. Railroad, 105 Mo.

371; Bunyan v. Railroad, 127 Mo. 12; Aldrich v. Transit Co., 101 Mo. App. 77; Reno v. Railroad, 180 Mo. 469-486; McGanty v. Railroad, 179 Mo. 583; Petty v. Railroad, 179 Mo. 666. (8) The court should have given defendant's instruction M, as said instruction properly declares the law and there is evidence upon which to base it. Aldrich v. Transit Co., 101 Mo. App. 89, 90; Brewing Assn. v. Talbott, 141 Mo. 674; Fuchs v. St. Louis, 133 Mo. 168; Boyd v. Railroad, 105 Mo. 371; Hill v. Drug Co., 140 Mo. 433; Bennett v. Terminal R. R. Assn., 145 S. W. 435; Dyrcz v. Railroad, 141 S. W. 865; Green v. Railroad, 192 Mo. 131; Schmidt v. Railroad, 191 Mo. 215; Mocowick v. Railroad, 196 Mo. 570; Stotler v. Railroad, 204 Mo. 619; Eppstein v. Railroad, 197 Mo. 733; Laun v. Railroad, 216 Mo. 563. (9) The court erred in not continuing on plaintiff's amendment of the petition by interlineation and' defendant's affidavit of surprise, as the affidavit showed good grounds for surprise and for continuance. Sec. 1961, R. S. 1909; Turnstall v. Hamilton, 8 Mo. 500. (10) The court should have excluded the evidence offered to show extension of the limits of Webb City, and refused any and all instructions based on the railroad track being within the limits of Webb City, because, first, the evidence was insufficient to show an extension; second, because the evidence shows the said extension to be unreasonable, and 3d, because the street railroad track being laid on its private right of way, the speed ordinance of Webb City is not controlling.

*R. A. Mooneyhan, Norman A. Cox* and *Hugh Dabbs* for respondent.

(1) The trial court did not err in refusing defendant's peremptory instruction at the close of all the evidence in the case. Woodward v. Railroad, 152 Mo. App. 468; Weller v. Railroad, 120 Mo. 653; Maness

v. J. & P. R. Co., 149 Mo. App. 259; Gratiot v. Railroad, 116 Mo. 450; Moore v. Railroad, 157 Mo. App. 65; Petty v. Railroad, 88 Mo. 318; Connor v. Railroad, 149 Mo. App. 687; Lang v Raildoad, 115 Mo. App. 498; Crumpley v. Hannibal & St. J., 111 Mo. 158; Donohue v. Railroad, 91 Mo. 363; 3 Elliott on Railroads, sec. 1096bq; Weller v. Railroad, 164 Mo. 180; Baker v. Railroad, 147 Mo. 140; Riska' v. Union Depot Co., 180 Mo. 187; Davidson v. Railroad, 164 Mo. App. 701. (2) The court properly defined negligence, but this was unnecessary in this case, as the instruction hypothecated facts which constitute negligence in law. Sweeney v. Railroad, 150 Mo. 401; Magrane v. Railroad, 183 Mo. 132. (3) Defendant was subject to the ordinances of the city of Webb City, regulating the speed of its cars, notwithstanding its tracks were laid on its private right of way. Dillon on Municipal Corporations (5 Ed.), sec. 716, 717 and 1272; Crowley v. Railroad, 65 Iowa, 658. (4) Sec. 3140, R. S. 1909, does apply to the defendant in this case. Secs. 3213, 3214, R. S. 1909; Baker v. Railroad, 147 Mo. 155; Railroad v. Wheeler, 63 Ill. App. 193; Booth on Street Railways (2 Ed.), sec. 431; Railroad v. Jacobs, 12 L. R. A. (Ala.) 830; Railroad v. Lohe, 67 L. R. A. (Ohio), 637; Aurora v. Traction Co., 81 N. E. 544; Spaulding v. Railroad, 80 N. E. 327; Commonwealth v. Railroad, 133 S. W. 230; Elliott on Railroads (2 Ed.), secs. 1155, 1156, 1158; Railroad v. Moffett, 44 Pac. 67, 54 Kan. 284; Riggs v. Railroad, 120 Mo. App. 355; McQuade v. Railroad, 200 Mo. 1566; Higgins v. Railroad, 197 Mo. 300; 33 Cyc., 665. (5) Instructions 2 and 3 were proper because the evidence shows, according to plaintiff's theory, that he approached the track in the exercise of ordinary care and looked and listened, and when plaintiff did look up the track and listen, and neither saw nor heard a car, he then had a right to presume that no car was coming, and that the agents and servants of defendant would use ordinary care.

Riska v. Union Depot Co., 180 Mo. 186; Gratoit v. Railroad, 116 Mo. 464; Donohue v. Railroad, 91 Mo. 363; Woodward v. Railroad, 152 Mo. App. 476; Manness v. Railroad, 149 Mo. App. 264; Baker v. Railroad, 147 Mo. 143; Lang v. Railroad, 115 Mo. App. 489; Thompson on Negligence, secs. 1553, 1582 and 1612. See also cases cited under point of this brief. (6) The trial court did not err in refusing instruction 1, asked by defendant, because there is no evidence in the record that plaintiff was hard of hearing. For that reason, this instruction would have been reversible error. (7) The court properly refuse instruction K, requested by appellant. This question was not before the court and it is certainly not error to refuse instructions on propositions of law not in the case. (8) The court did not err in refusing appellant's instruction M. This instruction is an unwarranted comment on the evidence, and the last part of it is absurd, as it undertakes to tell the jury that if the step of defendant's car struck plaintiff and did not strike the motorcycle, plaintiff cannot recover. Scott v. Railroad, 138 Mo. App. 196; Hull v. Transfer Co., 135 Mo. App. 110; Spencer v. Railroad, 152 Mo. App. 118. (9) The court did not err in refusing to continue the cause on account of plaintiff's amendment to the petition, because the amendment did not, in any way, change the issues, or call for evidence of a different kind from that already presented. (10) The ordinance of Webb City introduced in evidence and showing the extension of city limits was properly admitted. The extension was properly made, although that could not be an issue in this case. The validity of the incorporation or extension of the limits of Webb City could not be questioned in a collateral way, but only by *quo warranto* proceedings. The fact that defendant's street railroad was laid on its private right of way through the outskirts of Webb City was no defense to the action, because it was within the corporate limits of

Webb City, and the only way that appellant could challenge the speed ordinance would be on the ground that it was unreasonable. This the appellant did not do in the trial court, and the question cannot be raised for the first time in the appellate court.

STURGIS, J.—The injuries for which plaintiff brought suit and recovered judgment were caused by his coming in collision with one of defendant's inter-urban cars running on its road extending from Carthage, Missouri, through Webb City and Joplin to Galena, Kansas. The cars are propelled by electricity and the road is what is termed a trolley line, running single cars thereon. The collision occurred at a public road crossing south of Webb City. This public road runs east and west and forms the southern boundary of that city. The defendant's car line crosses this at right angles. The plaintiff was traveling eastward along this road on a motorcycle and defendant's car was going south. The result was that they collided at the crossing and plaintiff was severely injured, his skull fractured and he received such permanent injuries therefrom as will justify a judgment of $7500, provided defendant is to be held responsible for his injury.

As is usual in this class of cases the plaintiff claims that the accident was wholly due to the fault and negligence of defendant. On the other hand the defendant says that plaintiff was not without fault and negligence on his part and that his injuries were caused wholly or partially by his own negligence. The specific acts of negligence set out by plaintiff in his petition are: 1st. Negligently failing to ring the bell or gong thereon at a distance of eighty rods from said crossing and to keep same ringing until said car had crossed said highway; and also failed to sound the whistle on said car at a distance of eighty rods from said crossing and to sound said whistle at intervals

until said car had crossed said highway; 2nd. Running at a greater rate of speed than fifteen miles per hour in violation of the ordinances of Webb City; 3rd. Negligently approaching the crossing at a rapid and dangerous rate of speed without giving any warning sufficient to notify plaintiff that said car was coming, and negligently failing to ring the bell and sound the whistle on said car at a sufficient distance from said crossing to give plaintiff and persons approaching said crossing along said highway notice of the approach of said car, and negligently failing to give any warning sufficient to notify persons approaching said crossing of the approach of said car.

The answer of defendant, after admitting its incorporation under the general railroad laws of Missouri and its operation of an interurban electric railway system for carrying passengers, is a general denial and this affirmative defense: "Defendant, further answering, says that the accident and injuries, if any, received by plaintiff, were caused solely and wholly by the fault and negligence of the plaintiff in that the plaintiff, riding a motorcycle, approached the track of defendant's railroad from the west at an exceedingly rapid rate of speed, and without looking or listening for a car thereon, when by looking he could have seen, and by listening he could have heard, attempted to cross said railroad, and did cross the west track of said road with his motorcycle, when for some cause or other, plaintiff slipped- off the back end of his motorcycle and was caught by the east step of the car running on the west track of said road; all of which was without fault or negligence on the part of this defendant."

The petition was originally in two counts and at the close of his evidence in chief, plaintiff, by leave of court, amended his first count by inserting the third ground of negligence as above mentioned. Thereupon defendant filed an affidavit of surprise and asked for

a continuance. This was refused and the court's action in this respect is assigned as error. As substantially this same ground of negligence was already in the second count of the petition, and so constituted a part of plaintiff's cause of action which defendant was required to meet, its insertion in the first count could not have misled defendant to his injury. At least it was not such an abuse of the court's discretion in such matter as to call for a reversal of the case. This assignment is therefore ruled against the defendant.

It will be noted that there are three grounds of negligence alleged by plaintiff with reference to the running of defendant's car: (1) Exceeding the speed limit of fifteen miles an hour in violation of the ordinances of Webb City; (2) failing to ring the bell or sound the whistle not less than eighty rods from the public crossing as required by statute, section 3140, Revised Statutes 1909, relating to railroads generally; (3) common law negligence in approaching and passing over a much traveled road crossing at a high rate of speed without giving any sufficient and timely alarm or warning of the approaching car. Much is said in the briefs of counsel as to whether or not section 3140, Revised Statutes 1909, requiring a bell to be placed on all locomotive engines and to be rung at least eighty rods from public crossings and kept ringing until it shall cross the road, or that a steam whistle shall be attached to the engine and shall be sounded and kept sounding at intervals for a like distance, should be made to apply to interurban cars propelled by electricity. It is argued by defendant that the reading of said section conclusively refutes the idea that it applies to anything except railroads operated by steam engines. This is an old statute and certainly was not intended when enacted to apply to other than steam railroads. On the other hand it is argued by plaintiff and admitted by defendant that defendant is incor-

porated under the general railroad act applying to
steam railroads and therefore assumed all the obliga-
tions and liabilities of steam railroads; that the spirit
and intent of the statute is that of public safety and
should aply to all rapidly moving and dangerous cars
regardless of the motive power.  This is a somewhat
new question in this State and the excellent briefs of
counsel on both sides present most, if not all, the au-
thorities bearing directly or indirectly on this ques-
tion.  The plaintiff cites as supporting his position:
Commonwealth v. Railroad, 133 S. W. (Ky.), 230;
Baltimore Railroad v. Wheeler, 63 Ill. App. 193; Birm-
ingham Railroad v. Jacobs, 12 L. R. A. (Ala.) 830;
Hannah v. Railway, 81 Mo. App. 78.  The defendant
cites as supporting its contention:  Fallon v. Street
Railway, 50 N. E. (Mass.) 536; Transit Co. v. Andis,
72 N. E. 145; Stranahan v. Railway, 84 N. Y. 308;
Thying v. Railroad, 156 Mass. 13, 30 N. E. 169; Henson
v. Railroad, 110 Mo. App. 595, 85 S. W. 597; Jaris v.
Hitch, 67 N. E. (Ind.) 1057.

Whatever may be the proper solution of this
question as to whether the particular signals and at
the particular distances required by statutes prima-
rily intended for steam railroads shall be applied to
electric cars running at a high rate of speed through
the country, it is of more importance to the instant
case to note that all the authorities agree that the per-
sons operating such electric road and cars are re-
quired, regardless of statute, to give effective and
timely warnings commensurate with the speed and
danger likely to result from running the same.  [Ba-
ker v. Railroad, 147 Mo. 140, 160, 48 S. W. 838; Cin-
cinnati Electric Railroad v. Lohe, 67 L. R. A. (Ohio)
637; Aurora v. Traction Co., 81 N. E. (Ill.) 544;
Spalding v. Railroad, 80 N. E. 327; Pacific Rail-
road v. Moffett, 44 Pac. (Kan.) 67; Elliott on Rail-
roads (2 Ed.), secs. 1155, 1156; Booth on Street Rail-

roads (2 Ed.), sec. 431; Hannah v. Railroad, 81 Mo.
App. 78.]

We need not decide this point or discuss the mat-
ter further for this reason: The principal instruction
given for plaintiff and the only one covering the entire
case and directing a verdict for plaintiff is on the
conjunctive or cumulative plan as follows: ''If the
jury find and believe from the evidence in this case
that the defendant, on the 30th day of October, 1911,
was running and operating an electric railway between
Carthage, Missouri, and Galena, Kansas, and through
the corporate limits of the city of Webb City, and
that the tracks of defendant were laid across a public
highway in Jasper county, Missouri near Mount Hope
Cemetery, and if the jury further find that defendant's
right of way and tracks, from a point more than eighty
rods north of said crossing, extended south through
the outskirts and in the corporate limits of Webb City,
and up to the boundary of said public highway and
crossing, and if the jury further find from the evidence
that on said day plaintiff was traveling on said high-
way at the point of crossing of defendant's tracks,
and that plaintiff was in the exercise of ordinary care
on his part, and that the servants and employees of
defendant in charge of the car mentioned in evidence,
in operating and running said car negligently failed,
in approaching said crossing to ring the bell thereon
at a distance of eighty rods therefrom and to keep
same ringing until said car had crossed said highway,
and also failed, in approaching said crossing, to sound
the whistle on said car at a distance of eighty rods
from said crossing and to sound said whistle at inter-
vals until said car had crossed said highways—if you
so find—and if the jury find that defendant's agents
and servants in charge of said car negligently ap-
proached said crossing at a rapid and dangerous rate
of speed without giving any warning sufficient to notify
plaintiff and travelers approaching and about to pass

over said crossing that said car was coming, and in such a manner as to endanger plaintiff and travelers on said highway, and negligently failed to ring the bell and sound the whistle on said car at a sufficient distance from said crossing to give plaintiff and travelers approaching said crossing along said highway notice of the approach of said car, and if the jury further find that the agents and servants of defendant in charge of said car ran the same on defendant's tracks from a point north of said crossing through the outskirts of Webb City in approaching and up to said crossing—if you so find—at a greater rate of speed than fifteen (15) miles per hour, and that by reason and in consequence of such failures and conduct on the part of defendant, its agents and employees in charge of said car, if any, said car was caused to run against and strike plaintiff, thereby injuring him, you will find the issues in favor of the plaintiff.''

It will be noted that this instruction required the jury before finding for plaintiff to find defendant guilty of negligence on all three grounds mentioned in the petition. It is the well settled law that where an instruction predicates plaintiff's recovery on several grounds of negligence, all of which must be found for plaintiff before he can recover, then, if any one of such grounds constitutes actionable negligence and is supported by the evidence, that is sufficient. The defendant cannot complain that the jury were required to and did find more than the law requires in order to make defendant liable. [Kendrick v. Ryus, 225 Mo. 150, 168-9, 123 S. W. 937; Baker v. Railroad, 122 Mo. 533, 548, 26 S. W. 20; Gibler v. Railroad, 129 Mo. App. 93, 101, 107 S. W. 1021.] In the Gibler case just cited, the court, page 101, said: ''Complaint is made of the first instruction given for plaintiff, on the ground of lack of evidence to support it. Said instruction submitted to the jury all the charges of negligence made in the petition, and, as said, there was no evidence of

two of them. But, as the instruction was drawn in the conjunctive, and required the jury to find defendant guilty of all the acts of negligence charged as the condition of a verdict for plaintiff, the instruction was favorable to defendant rather than adverse; inasmuch as it imposed on plaintiff the duty to prove more than the law required in order to make a case.''

If the defendant was negligent, and the jury found it was, in running its car at a high and dangerous rate of speed in approaching the road crossing in question and did not give adequate and timely warning signals of such approach so as to notify travelers about to pass over the same, that is negligence enough, even if defendant cannot be held to a strict compliance with the statute as to giving such warning signals eighty rods from the crossing.

What has just been said also applies to the rate of speed being in excess of that prescribed by city ordinances. The defendant contends that the place of the accident and its road approaching thereto were not shown to be within the limits of Webb City and so defendant was not governed by the ordinances of said city limiting its speed to fifteen miles per hour in the outskirts of that city; also that as it was then running its car on its private right of way and not on or across any street of that city, such ordinances did not apply. While neither of these contentions can be sustained and without in any way according to the correctness of same, it is sufficient to say that the jury found that defendant was guilty of negligence in the manner above pointed out without any reference to any speed ordinance, and that such other ground of negligence is sufficient for this case.

This brings us to the real questions in the case: Is the evidence sufficient to warrant the jury in finding defendant negligent in running its car at a high rate of speed without giving adequate and timely warning signals in approaching the road crossing in question;

if so, was the plaintiff also conclusively shown to have been guilty of negligence on his part contributing to the accident in his manner of approaching the crossing and in failing to use due care for his own safety in looking and listening for an approaching car; were these issues presented to the jury by proper instructions?

Taking the evidnce most strongly in favor of plaintiff, as we must do on this appeal, we have no difficulty in answering the first of these questions in the affirmative. The motorman in charge of the car admits that he was traveling at twenty-five miles per hour and perhaps more. Other witnesses place the speed at a higher rate. What might be termed the physical facts are that the car was going down grade on a straight track and the motorman says he first saw plaintiff approaching the crossing when his car was some two hundred or two hundred and fifty feet therefrom and that he at once applied the brakes and used every effort to stop the car; and yet the car struck plaintiff with sufficient force to hurl him some forty-five feet over a cattle-guard and he could not stop his car for near two-hundred feet beyond the crossing. This strongly tends to show the high rate of speed. The danger signal, which was such as to attract the attention of a number of witnesses, was sounded at the point where the motorman says he first saw the plaintiff, that is, some two hundred or two hundred and fifty feet from the crossing. Several of these witnesses say that the regular crossing signal, different from the continuous danger signal, was sounded almost immediately before the danger signal and no other signals were given. We think the jury were warranted in finding that the car in question was being run thirty miles or more per hour and that no warning signal was given until the car was within some three hundred to four hundred feet of the crossing and that this constitutes actionable negligence.

Whether plaintiff was conclusively shown to have been guilty of contributory negligence is the difficult point in the case. He also was traveling down grade to within some fifty or sixty feet of the crossing. He says he shut off the power of his motorcycle and was coasting down the hill and approaching the crossing at a speed of four to four and a half miles per hour. The motorman says that when he first saw plaintiff he was about fifty feet from the crossing and he thinks he was going fifteen miles per hour, and that when the alarm was sounded plaintiff tried to stop his motorcycle but failed to do so before reaching the track. Some idea of the respective rates of speed may be had by noting that according to the motorman's statement plaintiff did not go to exceed fifty feet while defendant's car went two hundred to two hundred and fifty feet; that is four or five times as fast. The motorman explained the reason why plaintiff did not pass the crossing ahead of the car, which he certainly would have done if going fifteen miles per hour, by saying that plaintiff was trying to stop and slowed up; but the motorman forgets that he also was trying to stop and had likewise slowed up. The jury therefore were warranted in finding that plaintiff's statement as to his rate of speed in approaching the crossing was substantially as stated by him and was not negligence *per se.*

It is claimed that plaintiff is conclusively shown to have been guilty of negligence in that, while approaching the place of danger, he did not take proper precautions for his own safety in looking and listening for an approaching car when to do so would have avoided the injury. This is the crucial point in the case. There is a wealth of learning on this point and the briefs leave little to be said as to the law; in fact, the difficulty is not in finding and declaring the principles of law applicable to this ground of negligence and counsel for the respective sides do not differ

much as to the law. The difficulty is in applying the law to the particuar facts of this case. Each case must depend on its own particular facts. In the present case the car was traveling south and plaintiff east. On the west side of defendant's right of way there was a cemetery. There was an office building about one hundred and fifty or one hundred and sixty feet north and fifty feet west of the railroad track measured by the west track on which the car was running. From the south side of this building a stone fence about four feet three inches high extended east some thirty feet, or to within twenty feet of the west track, and then runs south forty-four feet parallel with the track and then curves westward and southward so as to make a corner entrance to the cemetery. There were vines on this wall and columns three or four feet square and seven or eight feet high at intervals. North of the office building was a wire fence running north and thence east to a cattle-guard two hundred and fifty feet north of the crossing. Near or along this fence and still further north were trees and bushes, some witnesses say trimmed high and others say not much higher than the fence.

Plaintiff says that on account of these obstructions he could not see up defendant's track as far as the cattle-guard, two-hundred and fifty feet from the crossing, until within less than fifty feet of same; at which point he could see past the northeast corner of the curved stone wall entrance to the cemetery. At a point twenty-five feet from the crossing he would have a nearly clear view up the track to the top of the hill six hundred feet distant, though the track passed through a cut some six or seven feet deep at the deepest point between the cattle-guard and the hill top. In this matter plaintiff is corroborated by the motorman, who says he was looking to see if anyone was at or near the crossing as he approached it and that plaintiff first came into view from behind the stone wall

when the car was at a point about two hundred feet north of the crossing and that plaintiff was then about fifty feet west of the crossing, and that that point was as far west as he could see and that he could not have seen that far west one hundred feet further north. According to plaintiff's evidence he must have been much nearer the track than fifty feet when the motorman was at the point he says he first saw him and gave the alarm. The jury therefore were justified in finding that plaintiff could not have seen the approaching car, unless it was within two hundred feet of the crossing, till plaintiff was within fifty feet of the same; and that the line of vision extended further north as he came nearer the crossing till at twenty-five feet he had a practically clear view to the top of the hill. The jury were also justified in finding from the respective rates of speed of plaintiff and the car that at the time plaintiff reached the point fifty feet west of the crossing where he could see up the track a distance of some two hundred and fifty feet, that the car was then much further away and was not within his vision. We also think that the jury were justified in finding that if defendant had been giving proper signals at that time that plaintiff would have heard the same and his injury been avoided.

Plaintiff further says that, being somewhat familiar with the crossing and surroundings, he had the crossing in mind and was looking north so as to see any car approaching as soon as he passed the obstructions; that when he was at the point about fifty feet west of the crossing where he could then see about two hundred to two hundred and forty feet up the track, that he then looked and could see no car coming or hear any sounds of an approaching car; that he then looked south and saw a clear track in that direction and was then close to the crossing; that he remembered nothing further until he was in the hospital a day or two later.

That a railroad is in and of itself a warning of danger and that anyone attempting to cross the same must use his senses—look and listen—to ascertain whether a train is approaching in dangerous proximity, and that the failure to do that is negligence *per se* contributing to any injury received, and that in such case no amount of negligence on the part of the defendant will warrant a recovery, is elementary law. This duty of the traveler to use care to ascertain whether the train is coming or not is wholly independent of the failure of the railroad company to observe any or all duties imposed on it, such as giving signals or running at a reasonable rate of speed. [Sanguinette v. Railroad, 196 Mo. 466, 95 S. W. 386; Hayden v. Railroad, 124 Mo. 566, 28 S. W. 74; Huggart v. Railroad, 134 Mo. 673, 36 S. W. 220; Schmidt v. Railroad, 191 Mo. 215, 90 S. W. 136; Laun v. Railroad, 216 Mo. 563, 116 S. W. 553; McCreery v. Railways Company, 221 Mo. 18, 120 S. W. 24; Farris v. Railroad, 167 Mo. App. 392, 151 S. W. 979; Burge v. Railroad, 224 Mo. 76, 148 S. W. 925; Greene v. Railroad, 192 Mo. 139, 90 S. W. 805; Stotler v. Railroad, 204 Mo. 619, 103 S. W. 1.]

It is said in Porter v. Railroad, 199 Mo. 82, 96, 97 S. W. 880, that: "It is well settled in this State that when a traveler approaches a railroad crossing he must look both ways and listen for coming trains, and the negligence of the company in failing to give proper signals will not excuse the traveler's duty to look and listen. [Fletcher v. Railroad, 64 Mo. 484; Zimmerman v. Railroad, 71 Mo. 476; Baker v. Railroad, 122 Mo. 533; Stepp v. Railroad, 85 Mo. 229; Donohue v. Railroad, 91 Mo. 357; Butts v. Railroad, 98 Mo. 272; Schmidt v. Railroad, 191 Mo. 215.]"

In Mockowick v. Railroad, 196 Mo. 550, 570, 94 S. W. 256, the court said: "(b) It needs no citation of authority to sustain the proposition that there was

an imperative duty resting upon plaintiff to act with reason and common sense and to look out for his own safety when about to cross defendant's track. He was charged with the duty of looking and listening, provided that by looking he could see and by listening he could hear. The law does not excuse those persons of mature years who have eyes and see not and ears and hear not. [Greene v. Railroad, 192 Mo. 131; Schmidt v. Railroad, 191 Mo. 215.]    . . . for the negligence of the defendants on the above hypothesis and the negligence of the injured party are concurrent, i. e., coincident in time and place. [See authorities, supra; also, Kelsay v. Railroad, 129 Mo. 362; Campbell v. Railroad, 175 Mo. l. c. 183-4; Boyd v. Railroad, 105 Mo. 371; Moore v. Railroad, 175 Mo. l. c. 544, and cases cited; Walker v. Railroad, 193 Mo. 453.]''

In Kelsay v. Railroad, 129 Mo. 362, 30 S. W. 339 the court states the law, page 372, as follows: ''The duty of a traveler upon a highway in approaching a railroad crossing, to use all reasonable precautions to ascertain the approach of trains and to avoid injury by them is well settled law, not only in this court, but perhaps in all the courts of this country. This rule imperatively requires him to look carefully, in both directions, at a convenient distance from the crossing, before venturing on it, if, by looking, a train could be seen. The duty will not be performed by attempting to look only from a point at which the view is obstructed. The duty is a continuing one until the crossing is reached. If there is a point between the obstruction and the track which gives opportunity to see, it is the duty of the traveler to look. He cannot close his eyes and thereby relieve himself of the consequence of his own negligence. [Hayden v. Railroad, 124 Mo. 566.]''

It is also the law that this duty to use reasonable care to ascertain the approach of a train in dangerous

proximity is not in all cases at least discharged by a single look made at some distance from the crossing. The duty is a continuous one but depending on circumstances. If there are obstructions the traveler must look after the obstructions are passed and the circumstances might require that he stop to investigate before venturing into danger. If the sight is obstructed then greater care should be given to sound. [Walker v. Railroad, 193 Mo. 453, 92 S. W. 83; Kelsay v. Railroad, 129 Mo. 362, 371, 30 S. W. 339; Cole v. Railroad, 121 Mo. App. 605, 610, 97 S. W. 555.]

Whether plaintiff is guilty of negligence in failing to look and listen at a point nearer the danger zone is somewhat dependent upon his method of travel and other circumstances of the particular case. What would be negligence in this respect by one walking might not be negligence in one riding in a wagon or on a motorcycle. This is true for the reason that a person walking can control his movements and stop much quicker than while riding and having a team or machine to control. As said in Farris v. Railroad, 151 S. W. 979, "This rule is particularly applicable to persons traveling on foot, 'since the danger zone in such a case is so narrow, and it may be avoided with so little effort.'" [See, also, 33 Cyc. 1012.] As the danger zone widens so the looking and listening zone narrows. Nothing was shown in this case as to the distance in which a motorcycle traveling at four or five miles per hour could be stopped, except that plaintiff said he could not stop it within ten and possible not within twenty feet. We are not prepared to say whether this is true or not.

While it is true that a person approaching a railroad crossing is not permitted to rely on the presumption that the car will be run at a lawful rate of speed and that the timely signals will be given as the car approaches the crossing to the extent that he may neglect his own duty in using care to look and listen

for such cars; yet, the courts do not exact the highest degree of care and watchfulness in this respect. The traveler is only required to use ordinary care in that respect. The point at which the last look for an approaching car was taken may be so far from the actual danger point or the intervening time so great that the failure to look and listen at a nearer point may under the circumstances be declared negligence as a matter of law. Such was the case in Semple v. Railroad, 152 Mo. App. 18, 24, 133 S. W. 114; Cole v. Railway, 121 Mo. App. 605, 97 S. W. 555. On the other hand the point at which plaintiff looked and listened and saw and heard no coming car may be so near the crossing and the circumstances such that plaintiff may rely on the presumption that no car will be run at so high a rate of speed and without any signals being given as to make it dangerous for him to cross the track. He must rely on this at some point. Thus in Woodward v. Railroad, 152 Mo. App. 468, 133 S. W. 677, plaintiff was traveling in a buggy and could not see down the track until she passed a warehouse and was then thirty-five feet from the crossing and could see four hundred feet down the track. She then looked and listened and neither saw nor heard a train. She did not look again, though by doing so nearer the track she could have seen a train at a much further distance. The court said: ''The next and most serious question arising from the demurrer to the evidence is that of plaintiff's conduct in going into a position of peril without looking but once in the direction of the train. Some six or seven seconds passed during her progress from the place where she stepped to the point where she passed into the danger zone. . . . A traveler crossing a railroad track must be attentive to his safety from the time he approaches the first danger line until he passes over the last. . . . Having eyes and ears he must use them as a reasonable, careful and prudent man would use

them, and not trust his safety to others when he is in a position to take care of himself. But of necessity a traveler is compelled to place some reliance on the care of others. Plaintiff knew that the bell should be rung, and also that there was an ordinance limiting the speed of trains to ten miles per hour. She was justified in assuming, from the fact that she could see four hundred feet, and no train was in sight or hearing, that the way was clear and she could cross in safety. It is true she was not absolved from the exercise of constant attentiveness, but she had other places to look and other things to engage her attention that were legitimate and natural subjects of attention.''

In Moore v. Railroad Co., 157 Mo. App. 53, 65, 137 S. W. 5, the court said: ''There can be no doubt of the proposition pertinent here that plaintiff was not required to anticipate defendant's negligence; but, on the contrary, he enjoyed the right to rely upon its performence of duty. So relying, he was authorized to assume that if a locomotive were in the immediate vicinity, it would both comply with the ordinance by moving forward at a rate not to exceed eight miles per hour and sound the usual signals of approach. . . . Besides, as before stated, he was authorized to assume defendant's locomotive would be sounding a signal if one were near. Having heard no sound, his act of driving forward with the horse under such control as to afford him an opportunity to save it from the collision entirely does not disclose such reckless conduct as would have justified the court in directing a verdict for defendant on the score of contributory negligence. Indeed, where the view of the track is obscured to within a few feet of the rail, as here, one on a highway may presuppose that the operatives of the locomotive are duly careful, and the precepts of ordinary care do not enjoin that he should go forward upon the ground to search out a danger which was ascertainable a few feet beyond by looking and list-

ening, except for the fact that defendant omitted to disclose it through its failure to perform the duties as to signals which the law enjoins.''

This proposition is well stated in Campbell v. St. Louis Railway Co., 175 Mo. 161, 172 and 173, 75 S. W. 86, where the court said: ''From the facts and circumstances shown by the plaintiff's evidence the conclusion might reasonably be drawn that the deceased was guilty of such negligence, but unless that is the only conclusion that can reasonably be drawn from those facts and circumstances, the demurrer to the evidence was properly overruled. If the evidence was such that there could reasonably be no two opinions about it, then its effect should have been declared by the court as a matter of law, otherwise, it was a question of fact for the jury. [Gratoit v. Railroad, 116 Mo. 450; Weller v. Railroad, 120 Mo. 635.] . . . It was incumbent on the boy to have used his eyes and ears before driving on the tract, and if all that these witnesses said was true he would have seen or heard the car if he had stopped and looked and listened. Whilst it is the duty of one under such circumstances to look and listen, and sometimes it is the duty to stop in order the better to see and hear, yet it is not always incumbent on him to stop for that purpose; whether he should do so or not in a given case depends on the circumstances, and if it is doubtful the jury are to judge of it.'' To the same effect are Maness v. Railroad, 149 Mo. App. 259. 264, 130 S. W. 87; Weller v. Railway Co., 120 Mo. 635, 651, 23 S. W. 1061, 25 S. W. 532; Gratiot v. Railway Co., 116 Mo. 450, 21 S. W. 1094.

We conclude, therefore, that reasonable men might differ as to plaintiff's negligence under the circumstances of this case; and that there is some evidence to sustain the finding that plaintiff exercised ordinary care for his own safety in approaching and attempting to pass over the crossing; and that the

court properly refused to direct the verdict for defendant on that ground.

Complaint is also made as to each and all the instructions given and refused. The length of this opinion forbids that the instructions be set out at length and defendant's criticism of each discussed. We have examined them all in the light of defendant's criticisms and find that they properly declare the law. The jury were told in the instructions given that a railroad track is a warning of danger and that every person about to cross the track is bound to look and listen for coming cars before attempting to cross the same; and that a failure to look and listen is negligence and prevents a recovery regardless of defendant's negligence in operating the car; also, that it is the duty of the traveler not only to look and listen before entering upon the track, but if going at a rapid rate of speed to check his speed and to stop if necessary in order to have an opportunity to look and listen, and that a failure to do this would be negligence.

Of those refused, instruction D was properly refused because the court should not declare as a matter of law that it was negligence for plaintiff to fail to stop or check his motorcycle to enable him to see or hear the approaching car, regardless of his speed. [Esler v. Railroad, 109 Mo. App. 580, 83 S. W. 73.] Instruction C as given, required this provided plaintiff was going at a rapid rate of speed or if necessary in order to have an opportunity to look and listen. This was sufficient. Instruction H and I were properly refused because based in part on plaintiff having defective hearing and there was no evidence to support that fact. Instructions J, K and L are based on the humanitarian doctrine as contained in the second count of the petition, but as this count was dismissed that feature of the case disappeared and the jury had nothing to do with it. M was properly re-

fused because no such issue was in the case, and it is not perceived how the facts there stated would necessarily warrant a verdict for defendant. If it is meant thereby to tell the jury that if plaintiff had passed over the defendant's track ahead of the cars to a place of safety and then voluntarily came back into danger he could not recover, it is so unhappily worded as to confuse rather than enlighten the jury on that point. Instructions N and O were properly refused because sufficiently covered by numbers B and C as given. Number T relates to the ringing of the bell and sounding of the whistle eighty rods from the crossing and is disposed of by what we have said in regard to that matter.

It results from these views that the case should be and is affirmed. Robertson, P. J., concurs, *Farrington, J.*, dissents on the question of contributory negligence, and files separate opinion holding that this opinion is in conflict with certain decisions of our Supreme Court therein designated. The case is therefore certified to the Supreme Court.

## DISSENTING OPINION

FARRINGTON, J.—Suit for personal injuries. Verdict for $8000. A remittitur of $501. Judgment for $7499 against the defendant, which brings its appeal to this court.

There are numerous errors assigned by the appellant, none of which are necessary to consider in this opinion except that based on the refusal of the trial court to give a peremptory instruction which defendant requested on the theory that the case made by all the evidence shows that plaintiff's injuries were the direct result of controbutory negligence on his part so palpable as to constitute negligence in law and bar a recovery.

For the purpose of the discussion of this point, it is deemed necessary to briefly state the facts bearing upon it. Plaintiff, between ten and eleven o'clock in the forenoon, was riding a motorcycle toward the east along a public highway which crossed defendant's double-track interurban electric car line. He had been over this crossing a number of times and was acquainted with the surroundings, but the time in question was the first occasion on which he crossed it on a motorcycle. He was forty-eight years of age, in good physical condition, and possessed of all his faculties and organs of sense except that he was blind in his left eye. The defendant's tracks at this crossing run practically north and south, and the road on which plaintiff was traveling crossed the tracks east and west. There was a public road running north and south on the east side of defendant's tracks, and it was plaintiff's intention to cross the tracks and turn south on this road. The east and west road, after crossing the tracks, diverged north fifty to seventy-five feet before again turning east. Some five or six hundred feet north of the crossing, defendant's track come through a cut. On the west side of the tracks, and on the north side of the road on which plaintiff was traveling toward the crossing, is a cemetery around a part of which is a stone wall four or five feet high, where there were trees and vines and shrubbery, which, according to plaintiff's testimony—and this we must believe for the purpose of the discussion of this question —obstructed the view of the defendant's tracks north of the crossing until the plaintiff reached a point fifty feet west of the crossing. The undisputed testimony is that immediately upon coming out from behind this stone wall of the cemetery plaintiff looked to the north, and testimony offered by the plaintiff goes to show that from this point on the highway the view to the north would not take in more than two hundred of two hundred and thirty or forty feet of defendant's

tracks.   While there are some objections that the plat which was offered in evidence did not disclose the condition that existed at the time the collision with reference to foliage and other obstructions, still the plaintiff's witnesses admitted that the plat generally disclosed the true situation.   Plaintiff testified that the road he was traveling was down grade toward the railroad crossing until a point was reached about seventy-five or one hundred feet from the tracks where the roadway became level and thus approached the crossing.   He stated that for some distance before reaching this level place he had been running at a speed of probably eight or ten miles an hour, but that as he came down the hill to the level place he cut out his spark and coasted to the crossing, and that when he reached a point fifty feet from the tracks where he could look two hundred and thirty or forty feet north and from which point he says he did look (which, by the way, was the only time he looked toward the north), he was going at a speed which he estimated at from four to four and one-half miles an hour, with the power off.   He testified that after he glanced toward the north and saw no car approaching, he then glanced toward the south which was entirely open and where the tracks could be seen for a long distance and saw no car approaching from that direction; that having looked in both directions, he was next upon the railroad track and was struck by a southbound car.   He was unconscious for several days, and the injuries suffered from the collision were of such a serious nature as to justify his recovery of the amount of the judgment if the defendant is liable.

It is uncontroverted in this case that as plaintiff neared the tracks, after having passed the fifty foot point where he says he looked toward the north, the scope of his vision in that direction up the tracks became wider and longer, and, at a point twenty-five feet from the track on which he was struck, he could have

seen to the north to the top of the hill or a distance of probably five hundred or six hundred feet, because that brought him far enough east to see beyond the north part of the stone wall and beyond all obstructions to the north—which would enable him to see to the top of the hill.

The testimony as to the rate of speed defendant's car was running is variously estimated at from twenty-five to thirty-five miles an hour; and it will be taken as conceded that defendant in running its car at this place—which was just within the limits of Webb City—much in excess of the rate of speed fixed by the city ordinance, was guilty of negligence. The defendant's car was running seven or eight times as fast as the plaintiff's motorcycle according to plaintiff's own testimony. This being true, it will be readily seen that it would be a physical impossibility for the car, traveling at that rate of speed, to have been within two hundred or two hundred and thirty or forty feet of the crossing when plaintiff glanced toward the north at the point fifty feet from the crossing. It is also a physical certainty that when the plaintiff reached a point twenty-five feet from the track on which he was struck, the car was at a point on defendant's track which was plainly visible to a person looking in that direction; that car at that time must have been within one hundred and fifty to two hundred feet of the crossing, because the speed the car was running, according to plaintiff's testimony, would bring it within that distance. Plaintiff testified that he had never been able to stop his motorcycle within a distance of ten feet; that he probably could stop it within a distance of twenty feet, but didn't know. It will be seen that if he was going at the rate of speed which he says he was, it would have taken him some eight or nine seconds to have covered the distance from the point where he looked north to the point where the collision occurred. It is a mat-

ter of common experience that during this interval of time, a person could causally glance both north and south at least six or seven times. It is a matter of common knowledge that a person on a vehicle such as plaintiff was riding, going at so low a rate of speed—a little faster than a man walks—could in a moment step to the ground, or as quickly turn the machine to the north or south without danger. It is apparent that at a point twenty-five feet from the track, had the plaintiff looked toward the north he would have seen the car aproaching, and it is likewise apparent that at that point he was not in a place of danger, but of safety. If he failed to look for the car when it was there and while he was still in a safe place, or if he did look and see it and conclude to attempt to cross ahead of it, or if he did not have his motorcycle under proper control, he is guilty of such negligence, to my way of thinking, as to bar a recovery for the consequences. The law has been declared at numerous times and in no uncertain language that a person approaching a railroad track must exercise ordinary care for his own safety; that a railroad track, in itself, regardless of signals or warnings by those in charge of the cars, is a constant warning of danger; and that although the servants in the operation of the cars on the tracks run them negligently, in violation of law and a city speed ordinance, without giving the statuatory warning, still those who attempt to cross the tracks cannot put full reliance on the performance by the railroad company of its duty to properly run its cars, but must look and listen before attempting to cross, and if, by looking and listening, the danger of collision would become apparent and thus be averted by the individual, and this precaution is not taken, the negligence is concurrent, unless the railroad company could by the exercise of ordinary care under the circumstances stop the cars and thus prevent the collision, and the plaintiff is guilty of negli-

gence *per se*. There is no claim that the humanitarian doctrine applies in this case. It has been often said by the court of highest authority in this state that the duty of looking and listening and of vigilance on the part of those crossing railroad tracks is a continuing one up to the very danger zone. If this be the law, I cannot countenance the judgment in this case, where all the evidence shows that plaintiff looked to the north only once—when he was at a point where he could see but two hundred or two hundred and thirty or forty feet up the track. In other words, if looking where the full view of the tracks could not be had, at a point fifty feet from the crossing, fulfills the obligation which an individual owes himself in going over a railroad crossing, when no semblance of an excuse is offered for not looking again, the opinion of the majority of this court declares the law, but such holding, according to my judgment, is contrary to the law as declared by the Supreme Court of this State. It will be noted that there were no obstructions to the south to attract or impair plaintiff's vision. No one was coming out of the cemetery, or along the road from the east whom he would have to pass. He was on a motorcycle, coasting, with nothing to do but guide it and look and listen and care for his own safety. The record does not disclose one scintilla of evidence affording an excuse for plaintiff's failure to look again to the north. At any place within twenty-five—twenty—fifteen—or ten feet of the track, the car was plainly visible, bearing down upon him, and a mere step to the ground or a turn of the wheel would have placed the plaintiff out of danger; but without doing this, and relying on the glance toward the north when he was some fifty feet from the tracks, the plaintiff went on. It is true, he did not know exactly how many cars came along these tracks nor how often they came, but he did know that cars frequently passed there. The fact that he was blind in his left eye would necessar-

ily cut off a portion of his vision to the north and require the use of his other eye and his sense of hearing to a greater extent in that direction; and this at a place that required but one glance to the south where the tracks could be seen for a great distance, and where the glance to the north, when made, was obstructed beyond a point a little over two hundred feet distance. As has been said in many decisions, each case must stand on the state of facts therein presented. Probably no two accidents have ever occurred in *exactly* the same way or under the *same* circumstances. I have with great care considered the authorities cited and the argument presented by the respondent, but to my mind the facts of this case present but one conclusion, a conclusion about which there can be no difference of opinion and therefore no question for a jury. Practically all the cases cited and relied upon by the respondent, where the question of negligence was held to have been properly submitted to the jury, had some element in them as disclosed by the opinion which does not exist in the present case. In the Woodward case, 152 Mo. App. 468, 133 S. W. 677, which is particularly relied upon, the evidence is that the injured party looked in the direction from which the train came that injured her and could see four hundred feet, and then looked in the other direction and there saw an engine, an object on which her attention would naturally center and one that would tend to hold her attention and keep her from looking in the other direction again. In other cases cited, it appears, for example, that the headlight on the engine was not burning, or that from some other cause by looking and listening the approach of the train might not be observed. In this case there is no element or circumstance shown to have existed that would distract or tend to hold the plaintiff's attention, no object from which he could expect danger in any other diretion, no person approaching to whom he

owed a duty in operating his machine. All the evidence shows that had he taken the precaution to look when he could have seen and when he was yet in a place of safety he could not have helped seeing the approaching car. Respondent claims that when he looked, at the fifty foot point, where he could see two hundred or two hundred and thirty or forty feet to the north, and saw no car approaching, he could then rely upon the presumption that defendant would properly operate its cars and give the warning, and hence was lulled into a feeling of security in a place of danger. It has been recently reiterated by the Supreme Court that presumptions will suffice where there is no evidence to shed light on the situation, but that presumptions must fade in the light of facts and witnesses who testify and evidence the conditions. This applies equally as well to physical witnesses as to human testimony. Lulled into a feeling of security under the presumption, as he says he was at the fifty foot point, at possibly thirty-five, thirty, and surely twenty-five feet from the track, while he was yet in a place of safety, a witness appeared in plain view which dispelled and put to flight the presumption relied upon at the fifty foot point; that witness was the rapidly approaching car, a menacing, dangerous, warning messenger, telling a reasonably prudent man in plaintiff's position that to then attempt to cross the track meant almost certain destruction, and to know what this witness was saying the plaintiff as a reasonably prudent man had but to glance toward the north from a place of safety. This he failed to do, and for this failure no fact or circumstance or presumption is offered in this entire record as an excuse. Plaintiff's conduct was plainly, unquestionably, negligent. This negligence directly contributed to his injury and was the proximate cause thereof. When he was in a place of safety he could have looked, have seen, and have stopped or turned aside, and thus averted the

collision; he had the last chance to prevent the catastrophe if he had looked, and by failing in that particular he was guilty of contributory negligence as a matter of law, and the peremptory instruction for the defendant should have been given.

In the case of Walker v. Railroad, 193 Mo. 453, l. c. 481, 92 S. W. 83, it appears that the boys did stop and look and listen and that the train was not then in view, and that they went on without again looking in the direction from which the train came; and the court held that where they had traveled fifty feet at a speed a little slower than the plaintiff in this case traveled, such conduct on the part of an adult would bar a recovery as a matter of law.

The majority opinion, in my judgment, is in conflict with the following decisions of the Supreme Court: Walker v. Railroad, 193 Mo. 453, 92 S. W. 83; Strotler v. Railroad, 204 Mo. 619, 103 S. W. 1; Dyrcz v. Railway Co., 238 Mo. 33, 141 S. W. 861; Laun v. Railroad, 216 Mo. 563, 116 S. W. 553; Green v. Railway Co., 192 Mo. 131, 90 S. W. 805; Schmidt v. Railroad, 191 Mo. 215, 90 S. W. 136; Sanguinette v. Railroad, 196 Mo. 467, 95 S. W. 386; Mockowik v. Railroad, 196 Mo. 550, 94 S. W. 256; Porter v. Railroad Co., 199 Mo. 82, 97 S. W. 880; Guyer v. Railway Co., 174 Mo. 344, 73 S. W. 584; Huggart v. Railway Co., 134 Mo. 673, 36 S. W. 220; Hayden v. Railway Co., 124 Mo. 566, 28 S. W. 74. These decisions are founded on reason and are in accord with the decisions of other courts, both state and federal, in similar cases.

Entertaining these views, I respectfully dissent from the opinion of my associates, and under the conditions as they appear to me to exist, it becomes my duty to request that this case be certified to the Supreme Court for final determination.